# BIFULCO *v.* UNITED STATES

No. 79–5010.   Argued February 27, 1980—Decided June 16, 1980

382

Blackmun, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Stewart, Marshall, and Powell, JJ., joined. Burger, C. J., filed a concurring opinion, *post*, p. 401. Stevens, J., filed a dissenting opinion, in which White and Rehnquist, JJ., joined, *post*, p. 402.

*Steven Lloyd Barrett*, by appointment of the Court, 444 U. S. 939, argued the cause for petitioner. With him on the briefs were *William E. Hellerstein* and *Phylis Skloot Bamberger*.

*Harlon L. Dalton* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann, Deputy Solicitor General Frey*, and *John F. De Pue*.

Mr. Justice Blackmun delivered the opinion of the Court.

The issue presented in this case is whether § 406 of the Comprehensive Drug Abuse Prevention and Control Act of

1970 (Act), 84 Stat. 1265, 21 U. S. C. § 846,[1] authorizes a sentencing court to impose a term of special parole upon a defendant who is convicted of conspiracy to manufacture or distribute a controlled substance.

I

Section 406 provides:

"Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

The object of the conspiracy at issue in this case was the commission of the substantive offense defined in § 401 (a) of the Act, 21 U. S. C. § 841 (a). That subsection reads:

"Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

"(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

The penalties for violations of § 401 (a) are set forth in § 401 (b). That subsection authorizes the imposition of terms of imprisonment, fines, and, in some instances, mandatory minimum terms of special parole. The range of permissible punishments varies depending on the nature of the controlled substance involved, and on whether the defendant has been convicted previously of a drug offense. The penalty provision at issue is § 401 (b)(1)(B).[2] It states:

"Except as otherwise provided in section 405 [which

---

[1] The Act, Pub. L. 91–513, is set forth at 84 Stat. 1236–1296. For the sake of simplicity, further otherwise appropriate citations to the Statutes at Large will be omitted.

[2] This provision was amended in 1978, but the amendment is not perti-

deals with distribution to minors], any person who violates subsection (a) of this section shall be sentenced as follows:

.　　　.　　　.　　　.　　　.

"In the case of a controlled substance in schedule I or II which is not a narcotic drug or in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine or not more than $15,000, or both.　If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this title or title III or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine of not more than $30,000, or both.　Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 4 years in addition to such term of imprisonment."

Section 401 (c) describes the operation of the special parole term provisions in greater detail.　It states:

"A special parole term imposed under this section or section 405 may be revoked if its terms and conditions are violated.　In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole.　A person whose special parole

nent to the issue presented here.　See Pub. L. 95–633, § 201, 92 Stat. 3774, 21 U. S. C. § 841 (b)(1)(B)　(1976 ed., Supp. II).

term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section or section 405 shall be in addition to, and not in lieu of, any other parole provided for by law."

The narrow, but important, question presented in this case is whether § 406, which states the penalty for conspiracy as "imprisonment or fine or both," but limits maximum punishment by reference to the penalty provisions of the substantive target offense, authorizes the imposition of a special parole term where that sanction is included within the penalty provisions of the target offense.

## II

In an indictment filed in December 1976 with the United States District Court for the Eastern District of New York, petitioner Alphonse Bifulco and others were charged with a single count of conspiring to violate § 401 (a)(1) by knowingly and intentionally manufacturing, distributing, and possessing substantial quantities of phencyclidine, a schedule III controlled substance. This conspiracy was charged as a violation of § 406. A jury found petitioner and several codefendants guilty of the offense charged, and petitioner was sentenced to a 4-year term of imprisonment, a fine of $1,000, and a 5-year special parole term.[3] The United States Court of Appeals for the Second Circuit subsequently affirmed petitioner's conviction in an unpublished order.

In January 1979, petitioner, pursuant to 28 U. S. C. § 2255, filed *pro se* a motion to vacate his sentence. He claimed that

---

[3] The Court of Appeals stated that petitioner was charged with two substantive violations of § 401 (a)(1), in addition to the conspiracy count, and that he was acquitted of the substantive charges. 600 F. 2d 407, 408 (CA2 1979). The parties agree, however, that this is error and that petitioner was charged with, and convicted on, a single conspiracy count. Brief for Petitioner 4, n. 2; Brief for United States 4, n. 2.

the sentence was unlawful because § 406 does not authorize the imposition of a special parole term to be served upon completion of a term of imprisonment. The District Court held that petitioner had been properly sentenced, and dismissed his complaint. App. 7.

On appeal, the Second Circuit affirmed. 600 F. 2d 407 (1979). In a *per curiam* opinion, that court followed two other Courts of Appeals that had held that § 406 authorizes the imposition of a special parole term. See *United States* v. *Burman,* 584 F. 2d 1354, 1356–1358 (CA4 1978), cert. denied, 439 U. S. 1118 (1979), and *United States* v. *Jacobson,* 578 F. 2d 863, 867–868 (CA10), cert. denied, 439 U. S. 932 (1978). It also relied on the decision in *United States* v. *Dankert,* 507 F. 2d 190 (CA5 1975), which reached a similar result with respect to the closely analogous sentencing provisions of § 1013 of the Act, 21 U. S. C. § 963 (proscribing any conspiracy to import a controlled substance).

Shortly after the Second Circuit's decision in this case, the United States Court of Appeals for the Third Circuit reached the opposite conclusion on the issue and held that a special parole term may not be imposed under § 406. *United States* v. *Mearns,* 599 F. 2d 1296 (1979), aff'g 461 F. Supp. 641 (Del. 1978), cert. pending, No. 79–415. We granted certiorari, 444 U. S. 897 (1979), to resolve this conflict among the Courts of Appeals.[4]

---

[4] Two Courts of Appeals, in addition to those followed by the Second Circuit in this case, have joined in the conclusion that § 406 authorizes the imposition of a special parole term where such a term is included in the penalty provisions of the target offense. See *United States* v. *Sellers,* 603 F. 2d 53, 58 (CA8 1979), and *Cantu* v. *United States,* 598 F. 2d 471, 472 (CA5 1979). In addition, in a number of cases appellate courts have affirmed the convictions of defendants sentenced to special parole terms under § 406 without considering the question whether special parole was authorized. For example, the question presented here may have lingered beneath the surface in *United States* v. *Timmreck,* 441 U. S. 780 (1979).

In *Mearns,* the Third Circuit followed the lead of two District Court opinions (in addition to the opinion there under review) holding that special

## III

The Government recognizes, Brief for United States 31, n. 26, that our examination of the meaning of § 406 must be informed by the policy that the Court has expressed as "the rule of lenity." In past cases the Court has made it clear that this principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. See, *e. g., United States* v. *Batchelder,* 442 U. S. 114, 121 (1979); *Simpson* v. *United States,* 435 U. S. 6, 14–15 (1978). The Court's opinion in *Ladner* v. *United States,* 358 U. S. 169, 178 (1958), states the rule: "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." See *Whalen* v. *United States,* 445 U. S. 684, 695, n. 10 (1980); *Simpson* v. *United States,* 435 U. S., at 15.

The Court has emphasized that the "touchstone" of the rule of lenity "is statutory ambiguity." See, *e. g., Lewis* v. *United States,* 445 U. S. 55, 65 (1980). Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent. The Government argues here that there can be no uncertainty about Congress' intent to authorize a special parole term as a penalty for a conspiracy offense, whenever that penalty is authorized for the offense that was the target of the conspiracy. In advancing this argument, it focuses on the language and structure, legislative history, and motivating policies of the Act. We examine these three factors in turn.

---

parole is not a penalty authorized by § 406. See *United States* v. *Jacquinto,* 464 F. Supp. 728 (ED Pa. 1979), and *Fassette* v. *United States,* 444 F. Supp. 1245 (CD Cal. 1978). Cf. *United States* v. *Wells,* 470 F. Supp. 216 (SD Iowa 1979) (adopting the *Mearns* rationale in sentencing, pursuant to 18 U. S. C. § 3, accessories after the fact to a drug conspiracy).

## A

*Language and structure of the Act.* Several reviewing courts have adopted the view that the special parole term specified in § 401 (b)(1)(B) is necessarily included within the "term of imprisonment" to which it is appended. See, *e. g., United States* v. *Jacobson,* 578 F. 2d, at 868. Thus, when Congress stated in § 406 that a person guilty of attempt or conspiracy "is punishable by imprisonment," it meant to include within the term "imprisonment" any special parole term made applicable by the penalty provisions of the substantive offense. This argument is not too persuasive, however, because special parole is not authorized for all substantive offenses to which § 406 refers. Therefore, "imprisonment" within the meaning of § 406 does not always include special parole. As a period of supervision served upon completion of a prison term, special parole is also functionally distinct from incarceration. Finally, the penalty provisions of those substantive offenses that authorize special parole terms reflect this functional dichotomy. Section 401 (b)(1)(B), for example, twice provides that a special parole term of years is to be imposed *"in addition to* such term of imprisonment." (Emphasis added.) We agree, therefore, with the conclusion of those courts that have rejected the argument that "imprisonment" in § 406 plainly means a term of incarceration plus special parole. See. *e. g., United States* v. *Jacquinto,* 464 F. Supp. 728, 729–730 (ED Pa. 1979).

Faced with these obstacles, the Government cannot rely solely on a "plain meaning" interpretation of the term "imprisonment." Thus, in its principal argument, the Government asks this Court to take a broader view of the relationship between § 406 and the penalty provisions for substantive offenses and to conclude that the structure of the Act, viewed as a whole, creates an inference that § 406 incorporates by reference those substantive penalty provisions. The Government contends that the language of the statute supports this

reading because § 406 authorizes penalties "which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." While this argument is not wholly without force, it ignores the immediately preceding words of § 406, which state that "[a]ny person who attempts or conspires to commit any offense defined in this title is punishable *by imprisonment or fine or both.*" (Emphasis added.) [5] Petitioner argues that § 406 defines the types of punishment authorized for conspirators—imprisonment, fine, or both—and sets maximum limits on those sanctions through reference to the penalty provisions of the target offense. Petitioner's reading of the language of § 406, and the sentencing scheme that it proposes, is no less plausible than the Government's. Moreover, it is petitioner's reading that finds further support in the structure of the Act read as a whole.

Section 406 is not the only provision of the Act that defines sentences by reference to the penalty provisions of other offenses. Section 405 (a) of the Act, 21 U. S. C. § 845 (a), which enhances punishment for one convicted of distributing a controlled substance to a minor, provides:

> "Any person at least eighteen years of age who violates section 401 (a) (1) by distributing a controlled substance to a person under twenty-one years of age is . . . punishable by (1) a term of imprisonment, or a fine, or both, up to twice that authorized by section 401 (b), *and (2) at least twice any special parole term authorized by section 401 (b),* for a first offense involving the same controlled substance and schedule." (Emphasis supplied.) [6]

---

[5] The dissent's "ordinary reading of § 406," *post,* at 402, appears to be based on this same incomplete reading of the words of the conspiracy provision.

[6] Section 405 (b) likewise provides for treble enhancement of the fine, the term of imprisonment, *and the minimum length of any special parole term,* for one who is convicted a second or subsequent time for distributing a controlled substance to a minor.

At the least, Congress' separate enumeration of intended penalties in § 405 confirms its design to adhere to the functional distinction between "imprisonment, or a fine, or both" and the unique and novel concept of special parole. That no reference is made to special parole in § 406 thus supports petitioner's view that Congress did not intend it to constitute an element of the sentence imposed upon one convicted of conspiracy or attempt.[7]

Further proof that Congress intended special parole to be imposed only for certain substantive offenses defined in § 401 and § 405, and not for other offenses under the Act, is found in § 401 (c), which defines the workings of special parole. That subsection states: "A special parole term *imposed under this section or section 405* may be revoked if its terms and conditions are violated." (Emphasis supplied.) One convicted and sentenced for conspiracy under § 406 cannot be said to have had his sentence "imposed under" § 401 or § 405.[8]

---

[7] The Government argues that the express reference to special parole in § 405 does not detract from the view that § 406 incorporates special parole by implication. It contends that it was necessary for Congress to deal with special parole explicitly in § 405 because it chose to mandate a minimum special parole term of *at least* twice the length of the term authorized under § 401 (b), whereas § 405 imposes a fine or imprisonment of *up to* twice that otherwise authorized. The Government's argument does not dispel the fact, however, that Congress specifically accommodated the concept of special parole in one general provision imposing sentence by reference to other offenses, but did not do so with respect to an adjacent provision, § 406.

[8] The Government would explain the specificity of § 401 (c) as an instance where the drafters of that provision "simply looked to see what sections of the proposed bill used the term special parole, and inserted those section numbers into [the forerunner of § 401 (c)]." Brief for United States 26–27, n. 22. It argues, of course, that although § 406 did not refer to special parole in so many words, it did incorporate the sentencing provisions of § 401. We reject the Government's argument for reasons stated in the text. Moreover, its "explanation" assumes a carelessness in draftsmanship that probably is unwarranted; see the following subparts B and C.

## B

*Legislative history.* Conceding that Congress' draftsmanship when it enacted § 406 may have been less than "explicit," Brief for United States 17, and n. 10, the Government asks this Court to look beyond the ambiguous language of the statute, and to give its words "their fair meaning in accord with the manifest intent of the lawmakers." *United States* v. *Brown,* 333 U. S. 18, 26 (1948). The Government argues that the legislative history of the Act demonstrates that Congress intended that the penalties authorized for substantive offenses, and those for conspiracies to commit them, were to be identical.

It is true that prior to the Act federal narcotics legislation provided for a congruence between sentences authorized for substantive violations and sentences authorized for conspiracies.[9] A similar congruence was a feature of the several bills introduced in Congress in 1969 that were the forerunners of the Act. But a special parole term, a sanction previously unknown in the administration of our system of criminal justice, was not authorized as a penalty for any offense in those initial proposals.[10]

The special parole concept first was presented to Congress by John Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs, in testimony before a Senate Subcommittee

---

[9] See 21 U. S. C. §§ 174, 176a, 176b (1964 ed.); and 26 U. S. C. §§ 7237 (a) and (b) (1964 ed.).

[10] See S. 1895, 91st Cong., 1st Sess., §§ 701–708 (1969), and S. 2637, 91st Cong., 1st Sess., §§ 501–508 (1969), reprinted in Narcotics Legislation: Hearings on S. 1895 et al. before the Subcommittee to Investigate Juvenile Delinquency of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 69–77, 160–170 (1969). See also H. R. 13743 and H. R. 14774, 91st Cong., 1st Sess., §§ 501–508 (1969), reprinted in Part 1, Drug Abuse Control Amendments—1970: Hearings on H. R. 11701 and H. R. 13743 before the Subcommittee on Public Health and Welfare of the House Committee on Interstate and Foreign Commerce, 91st Cong., 2d Sess., 17–20 (1970).

on October 20, 1969.   See Narcotics Legislation: Hearings on
S. 1895 et al. before the Subcommittee to Investigate Juvenile
Delinquency of the Senate Committee on the Judiciary, 91st
Cong., 1st Sess., 663, 676 (1969).   The Attorney General ear-
lier had sought Subcommittee approval for further input from
the Justice Department on the penalty structures in the pend-
ing legislation, *id.*, at 255, and Mr. Ingersoll presented several
alternative penalty schemes for the Subcommittee's considera-
tion.[11]   His comments to the Subcommittee concerning the
special parole provisions were, in their entirety, as follows:

> "Another requirement that has been included in the
> alternative penalty schemes is a special parole term that
> is a part of the illicit trafficking sentence structure.   Just
> as incarceration is not always a meaningful answer to
> effective rehabilitation, certainly incarceration without an
> adequate supervisory followup after release is not in the
> best interest of society.

> "Therefore, we have required a special parole term so
> that persons sentenced for trafficking violations would be
> placed under supervision for a period of time regardless
> of whether they are incarcerated or their sentence pro-
> bated or suspended.   The intent here is to give the judges
> another tool for sentencing and another means of protect-
> ing society when dealing with the drug violator."   *Id.*, at
> 676.

---

[11] A chart setting out the alternative penalty schemes proposed by the
Justice Department is included in the record of hearings held before the
Subcommittee on Public Health and Welfare of the House Committee on
Interstate and Foreign Commerce.  *Id.*, at 90–92.  This chart describes the
penalty provisions favored by the Department for attempt and conspiracy
as providing "that any person who attempts or conspires to commit any
offense under the Act may be punished by imprisonment and/or fine,
which may not exceed the maximum punishment proscribed for commit-
ting the offense." *Id.*, at 92.  No mention is made of special parole terms
in the conspiracy context.  It seems, therefore, that the inexact drafts-
manship that the Government would find in the legislative history of
§ 406 is not to be attributed solely to Congress.

Mr. Ingersoll did not specify whether special parole terms were to be authorized for conspiracies to commit trafficking offenses, see n. 11, *supra,* and the bill that eventually was approved by the full Senate Committee on the Judiciary was no less ambiguous. See S. Rep. No. 91–613, pp. 116–118 (1969). That bill, S. 3246, 91st Cong., 2d Sess. (1970), in its §§ 501 (c)(1) and (2), mandated the imposition of a special parole term whenever a prison sentence was imposed under the forerunners to §§ 401 (b)(1)(A) and (B).[12] But § 504 of the bill, the forerunner to § 406, included no reference to special parole.[13]

The Judiciary Committee's section-by-section analysis of S. 3246 noted that special parole terms were to be imposed for certain substantive offenses, S. Rep. No. 91–613, at 25, but with respect to the "endeavor and conspiracy" provision stated only: "Section 504 provides that any person who endeavors or conspires to commit any offense defined in this title may be punished by imprisonment and/or a fine, which may not exceed the maximum punishment prescribed for the offense." *Id.,* at 26. The Government argues that the Subcommittee meant to include a specific reference to special parole in § 504 when it amended the substantive offense sections in response to Mr. Ingersoll's testimony. For unexplained reasons, however, the Subcommittee neglected to make the conforming

---

[12] The forerunner to § 401 (b)(1)(B) was § 501 (c)(2) of S. 3246. It provided an identical penalty scheme for first offenders as does the current substantive offense—a term of imprisonment of not more than five years, a fine of not more than $15,000, or both, and a 2-year minimum special parole term in addition to any term of imprisonment. See S. Rep. No. 91–613, at 116.

[13] Section 504 of S. 3246, which differed from § 406 only in its use of the term "endeavor" rather than "attempt," provided:

"Any person who endeavors or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the endeavor or conspiracy." S. Rep. No. 91–613, at 118.

change in the conspiracy section. Brief for United States 22. The wording of the Judiciary Committee's section-by-section analysis, however, would seem to indicate its awareness that § 504, unlike the subsections of § 501 that had been amended to incorporate the concept of special parole, authorized punishments consisting only of "imprisonment and/or a fine."

Further support for the view that the Judiciary Committee knew what it was doing when it approved § 504 of S. 3246 may be found in those provisions of the bill that dealt with a second or subsequent offense. Under the Act, doubly enhanced penalties for second offenders are included within the provisions defining the sentences for individual substantive offenses. See, *e. g.,* § 401 (b)(1)(B), quoted *supra,* at 383–384. S. 3246, however, contained a separate provision, § 508 (a), that set out the penalties for repeat offenders. It stated:

> "Any person convicted of any offense under this Act is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that authorized, by twice the fine otherwise authorized, or by both. If the conviction is for an offense punishable under subsection 501 (c)(1) or subsection 501 (c)(2) of this Act [the forerunners to §§ 401 (b)(1)(A) and (B)], and if it is the offender's second or subsequent offense, the court shall impose, in addition to any terms of imprisonment and fine, twice the special parole term otherwise authorized." S. Rep. No. 91–613, at 119–120.[14]

---

[14] An identical provision was contained in H. R. 17463, 91st Cong., 2d Sess., § 508 (a) (1970), a forerunner of the Act approved by one of the two House Committees to conduct hearings on the proposed narcotics legislation. See Controlled Dangerous Substances, Narcotics and Drug Control Laws: Hearings on H. R. 17463 before the House Committee on Ways and Means, 91st Cong., 2d Sess., 69 (1970) (hereinafter Ways and Means Hearings). The bill eventually passed by the House, H. R. 18583, 91st Cong., 2d Sess. (1970), incorporated enhanced penalties for repeat offenders within the individual substantive offenses. See 116 Cong. Rec. 33625 (1970). The House bills are discussed further below.

We think this section of the Senate bill makes it fairly evident that the Committee recognized that it had provided for the imposition of special parole terms under various subsections of § 501, but that it had not done so generally.[15] Thus, § 508 (a) of S. 3246, like § 405 of the Act, reveals that Congress' failure explicitly to incorporate the concept of special parole into the Act's conspiracy provision, alleged by the Government to have been inadvertent, in fact may have been intentional.

The only reference made to the special parole provisions during the Senate debates on S. 3246 tends to confirm this conclusion. Senator Dodd, the Subcommittee chairman, summarized the sentencing provisions of §§ 501 (c)(1) and (2) as follows:

> "Those selling schedule I and II narcotics such as heroin and opium can draw a sentence of up to 12 years and a possible fine of $25,000. For schedules I, II, and III sales of non-narcotics such as marihuana, 'pep pills' and the like, the sentence is up to 5 years and a possible fine not exceeding $15,000. A [minimum] special parole term of from 2 to 3 years is required for each of the above offenses." 116 Cong. Rec. 996 (1970).

Senator Dodd did not mention the special parole concept in the context of any other sentencing provisions; § 504, the conspiracy provision of S. 3246, was not mentioned at all during the Senate debates.

Given the scant support in the legislative history of the Senate bill for the Government's position, it is not surprising that the Government must place greater reliance on events that transpired during the House's consideration of proposed narcotics legislation similar to S. 3246. H. R. 17463, the subject of hearings before the House Committee on Ways and

---

[15] The Government makes the same argument with respect to the repeat offender provisions of S. 3246 and H. R. 17463 that it makes with respect to § 405, see n. 7, *supra*. The argument is no more persuasive here.

Means in July 1970, contained penalty provisions that were substantially identical to those in S. 3246. See H. R. 17463, 91st Cong., 2d Sess., §§ 501 (c)(1), (c)(2), and 504 (1970), reprinted in Ways and Means Hearings 61, 66.

Mr. Ingersoll appeared before the Committee on Ways and Means, testified as to the Department of Justice's firm support for H. R. 17463, and submitted a section-by-section analysis of the bill which highlighted the differences between its provisions and existing federal narcotics legislation. Ways and Means Hearings 210–211. That analysis described the operation of the special parole terms applicable to § 501 (c), and noted: "This special parole term is a new program, and there are no comparable laws now in force for narcotic drug law convictions." *Id.*, at 222. With respect to the bill's conspiracy provision, § 504, Mr. Ingersoll's section-by-section analysis stated:

> "This section provides that a person may be punished for endeavoring or conspiring to commit an offense under this Act. Upon conviction, his sentence may not exceed the punishment prescribed for the offense which was the object of the attempt or the conspiracy." *Id.*, at 223.

The Government would read the second sentence of this passage as explaining "that the sentencing scheme contemplated that conspiracy was to be punished to the same extent as object offenses, without exception." Brief for United States 24. But the Ingersoll statement, like the language enacted in § 406, explains merely that the punishment imposed for conspiracy may not exceed the punishment authorized for the pertinent target offense. It does not define the punishment authorized under the conspiracy provision to include special parole, and it does not disavow petitioner's theory that § 406 defines the types of punishment authorized for conspiracy, while the penalty provisions of the target offense set the maximum amounts of those types of punishment that properly may be imposed. Moreover, a chart sub-

mitted to the Committee by the Justice Department, and appended to Mr. Ingersoll's section-by-section analysis, specifically noted that H. R. 17463 authorized the imposition of special parole terms for certain substantive offenses. Ways and Means Hearings 229. With respect to the conspiracy section of the bill, however, the chart contained a footnote that merely reads: "H. R. 17463 provides that any person who endeavors or conspires to commit any offense under the act may be punished *by imprisonment and/or fine,* which may not exceed the maximum punishment proscribed [*sic*] for committing the offense." *Id.,* at 230, n. 6. (Emphasis supplied.) In sum, we find no persuasive support for the Government's argument in the report of the hearings before the House Committee on Ways and Means.

The hearings before the Committee on Ways and Means followed earlier hearings conducted by the House Committee on Interstate and Foreign Commerce. The latter Committee issued the House Report on H. R. 18583, 91st Cong., 2d Sess. (1970), which contained additions and revisions to H. R. 17463 not pertinent to the sentencing provisions at issue here. H. R. Rep. No. 91–1444, pt. 1 (1970). Like the Senate Report, the House Report appears plainly to recognize the distinction between the penalties for specific substantive offenses, authorizing special parole terms, and the conspiracy offense, authorizing only terms of imprisonment and fines. Thus, with respect to § 406 of H. R. 18583, the direct ancestor of the present § 406, the House Report's section-by-section analysis states:

> "Section 406 provides that any person who attempts or conspires to commit any offense defined in this title may be punished *by imprisonment and/or fine which may not exceed the maximum amount set for the offense,* the commission of which was the object of the attempt or conspiracy." H. R. Rep. No. 91–1444, at 50. (Emphasis supplied.)

The grammatical structure of this sentence lends obvious support to petitioner's theory that § 406 authorizes two types of sanctions—fines and imprisonment—and fixes the maximum amount of each that may be imposed by reference to the penalty provisions of the target offense.

In conclusion, we believe that, rather than supporting the Government's argument that Congress manifested an intention to authorize special parole terms for conspiracy convictions, the Act's legislative history supports the opposite view. In hearings, debates, and legislative reports, to the extent that Congress' attention was drawn to the matter, Members of both Houses explicitly recognized that the penalty provisions of some substantive offenses attached a mandatory minimum term of special parole to any term of imprisonment. On the other hand, every reference to one of the forerunners of § 406 stated that it authorized penalties consisting of imprisonment and/or fine, and failed to mention special parole.

## C

*Motivating policy.* The Government strongly argues, finally, that Congress' principal objective in enacting the penalty provisions of the Act—to deter professional criminals from engaging in drug trafficking for profit—"render[s] it unreasonable to ascribe to [Congress] the intent to authorize special parole for isolated substantive offenses while withholding this major sentencing tool for conspiracy offenses." Brief for United States 28. This contention is unpersuasive for two reasons.

First, as petitioner points out, Brief for Petitioner 14–23; Reply Brief for Petitioner 1–3, a comparison of those drug offenses for which Congress clearly authorized the imposition of special parole terms with those for which it clearly did not, does not reveal a coherent pattern based on the asserted justification for escalated sanctions. For some of the most serious offenses, as measured by the length of the term of imprisonment and severity of the fine they authorize, special

parole is not included among the available sanctions. *E. g.,* § 408 of the Act, 21 U. S. C. § 848 (continuing criminal enterprise); § 403 of the Act, 21 U. S. C. § 843 (registrants); and the new § 401 (d) of this Act, 21 U. S. C. § 841 (d) (1976 ed., Supp. II) (piperidine offenses). Thus, the Government's argument based on Congress' sentencing objectives would prove too much.

Second, the thrust of the Government's argument is that the conspiracy to engage in drug trafficking presents at least as great a threat, if not a greater one, to the community as does an isolated act of distribution. In other contexts, we have recognized the logic of that view. See, *e. g., Iannelli* v. *United States,* 420 U. S. 770, 778 (1975). From this premise, the Government contends that Congress must have desired the harsh sanctions incorporated within the concept of special parole—the unlimited maximum length of its term and the grave consequences attending its revocation, see § 401 (c)— to be available to the judge sentencing a drug conspirator.

What the Government does not mention, however, is that § 406 sets identical penalties for conspiracies and for attempts. Congress dealt with both these forms of inchoate crime in a single provision, and prescribed an identical range of punishment for a person convicted of participation in a major trafficking conspiracy, and for another person convicted of an unsuccessful attempt to manufacture or distribute a small amount of a controlled substance. When one focuses on the fact that § 406 penalizes attempts as well as conspiracies, it is not surprising that Congress would provide for less stringent sanctions to be imposed for violations of that provision than for a completed substantive offense. Indeed, as Mr. Ingersoll pointed out in his section-by-section analysis of H. R. 17463, prior to the passage of this Act an attempt to commit a substantive drug offense was not punishable at all under the federal narcotics laws. Ways and Means Hearings 223.[16]

---

[16] The dissent takes us to task for failing to recognize that it is unlikely that Congress would intend that "the directors of a narcotics distribution

## IV

This investigation into the meaning of § 406, as informed by an examination of its language and structure, its history, and relevant policy considerations, yields the likely conclusion that Congress' failure specifically to authorize the imposition of special parole terms as punishment for those convicted of conspiracy was not a slip of the legislative pen, nor the result of inartful draftsmanship, but was a conscious and not irrational legislative choice. Our analysis reveals, at the least, a complete absence of an unambiguous legislative decision to authorize special parole terms as punishment for those convicted of drug conspiracies. Of course, to the extent that doubts remain, they must be resolved in accord with the rule of lenity.[17] If our construction of Congress' intent, as evi-

business be punished less severely than their subordinates who merely peddle the poison." *Post,* at 402. But even a cursory reading of the Act should make it clear that our opinion today will not result in the sentencing disparity the dissent fears. Section 406's punishment provisions are not the sole sanctions Congress enacted for apprehended directors of organized drug trafficking operations. First, nothing prevents the Government from prosecuting the operators of a distribution network, either as principals or as aiders and abettors, for substantive manufacturing, distribution, and possession offenses, pursuant to § 401 of the Act, 21 U. S. C. § 841. Second, and more significantly, Congress enacted two special provisions with the directors of large trafficking operations particularly in mind. The sanctions available under those provisions are especially severe. See § 408 of the Act, 21 U. S. C. § 848 (continuing criminal enterprise); §§ 409 (e)(2) and (3) of the Act, 21 U. S. C. §§ 849 (e)(2) and (3) (defining a special drug offender).

[17] One might quarrel with our conclusion that Congress was aware of the distinction between the penalty provisions of § 401 (b)(1)(B) and § 406, and chose not to include special parole terms among the sanctions authorized for attempts and conspiracies. That it would be extremely difficult to accept the Government's argument that Congress *unambiguously intended* a contrary result, however, perhaps is best evidenced by the fact that the rule of lenity is not mentioned, let alone applied, in any of the lower court opinions that have accepted the Government's position. See cases cited in n. 4, *supra,* and accompanying text. The dissenting opinion would appear to fare little better on that score.

denced by the scant record it left behind, clashes with present legislative expectations, there is a simple remedy—the insertion of a brief appropriate phrase, by amendment, into the present language of § 406. But it is for Congress, and not this Court, to enact the words that will produce the result the Government seeks in this case.

The judgment of the Court of Appeals is reversed, and the case is remanded to that court with instructions to vacate the special parole term that was imposed upon petitioner.

*It is so ordered.*

MR. CHIEF JUSTICE BURGER, concurring.

If the question presented by this case were as simple and easy as the dissent formulates it—whether "the directors of a narcotics distribution business [should] be punished less severely than their subordinates who merely peddle the poison"—none of us would have any difficulty with the decision. But that is not really the issue. Rather, the question before the Court is substantially more limited: What do the words of the statute mean? Of course, we must try to discern the intent of Congress. But we perform that task by beginning with the ordinary meaning of the language of the statute. Our compass is not to read a statute to reach what we perceive—or even what we think a reasonable person should perceive—is a "sensible result"; Congress must be taken at its word unless we are to assume the role of statute revisers. *Aaron* v. *SEC,* 446 U. S. 680 (1980); *TVA* v. *Hill,* 437 U. S. 153, 173 (1978).

Particularly in the administration of criminal justice, a badly drawn statute places strains on judges. See, *e. g., Busic* v. *United States,* 446 U. S. 398 (1980); *LaRocca* v. *United States* (decided with *Busic*). The temptation to exceed our limited judicial role and do what we regard as the more sensible thing is great, but it takes us on a slippery

slope. Our duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done. The Spirit of Liberty: Papers and Addresses of Learned Hand 306–307 (Dilliard ed. 1960).

Not without the same reluctance that in my view underlies the Court's opinion, I join the opinion.

MR. JUSTICE STEVENS, with whom MR. JUSTICE WHITE and MR. JUSTICE REHNQUIST join, dissenting.

Should the directors of a narcotics distribution business be punished less severely than their subordinates who merely peddle the poison? It is unlikely that Congress so intended. See *Callanan* v. *United States,* 364 U. S. 587, 593–594.

Since an ordinary reading of § 406 [1] of the Comprehensive Drug Abuse Prevention and Control Act of 1970 implies that a conspirator may be punished just as severely as a substantive offender, I would so construe the statute. This construction is fortified by the total absence of any statement by any legislator suggesting any purpose to treat conspirators in the drug trade with any greater lenity than substantive offenders.[2] This is particularly important in view of the fact that prior to the 1970 Act, Congress had authorized

---

[1] "Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 84 Stat. 1265, 21 U. S. C. § 846.

[2] Surely the Court's reference *ante,* at 399, to the offense of attempt cuts the other way, for it is common for legislation to authorize the same range of punishments for attempts as for substantive offenses. See, *e. g.,* American Law Institute, Model Penal Code § 5.05 (1) (Prop. Off. Draft 1962), which provides in part: "Except as otherwise provided in this Section, attempt, solicitation and conspiracy are crimes of the same grade and degree *as the most serious offense which is attempted or solicited or is an object of the conspiracy.*"

identical penalties for conspiracies and completed offenses. See *ante,* at 391.

Because the statutory language conveys quite a different meaning to me, and because the Court has not paused to consider the narrow issue presented by this case in the context of the larger objectives Congress was seeking, I respectfully dissent.