**UNITED STATES of America, Appellee,**

v.

**Eugene B. CAMERON, Appellant.**

**No. 88–3116.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Nov. 8, 1989.

Arthur S. Robinson, Robinson, Beiswenger & Ehrhardt, Soldotna, Alaska, for defendant-appellant.

Joseph W. Bottini, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before ALDISERT *, WRIGHT and BEEZER, Circuit Judges.

ALDISERT, Circuit Judge:

The question for decision is whether violating regulations of the International Pacific Halibut Commission ("IPHC" or "Commission") is a proper basis for a criminal prosecution under the Lacey Act, 16 U.S.C. §§ 3372(a)(1), 3373(d)(1)(B). If so, we must then decide if promulgating a regulation limiting a day's catch to 20,000 lbs. exceeded the Commission's authority. We conclude that violating the regulation was a sufficient basis for the Lacey Act criminal prosecution here and that the Commission was duly authorized to promulgate the fish limit regulation. Accordingly,

we will affirm the judgment of the district court in this appeal by Eugene B. Cameron from a judgment of sentence entered upon a guilty plea conditioned upon the resolution of the two issues presented to us. We will vacate only that portion of the sentence imposing a special assessment.

Jurisdiction was proper in the trial court based on 16 U.S.C. § 3375(c). Jurisdiction on appeal is proper based on 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(b), F.R.App.P. Before proceeding into the facts, it is necessary to explain the purpose of the regulation and the scope of the Lacey Act.

I.

The Northern Pacific Halibut Fishery is regulated by the International Pacific Halibut Commission, pursuant to an international fishing treaty between the United States and Canada. Protocol Amending the Convention for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea, United States–Canada, Mar. 29, 1979, 32 U.S.T. 2483 [hereinafter "Protocol"]. Regulations promulgated by the IPHC are adopted by the Secretary of Commerce, pursuant to The Northern Pacific Halibut Act of 1982, 16 U.S.C. §§ 773–773k. The Halibut Act makes it unlawful for anyone to violate any regulation adopted by the Secretary of Commerce. 16 U.S.C. §§ 773c(b)(1), 773e(a)(1). The Lacey Act, 16 U.S.C. §§ 3371–3378, federalizes the violation of most independent state, tribal and federal wildlife laws. See, S.Rep. No. 123, 97th Cong., 1st Sess., 4, reprinted in 1981, U.S. Code Cong. & Admin.News 1748, 1751.

The Commission uses several regulatory mechanisms to preserve halibut fishing in Alaska. Included are the setting of overall catch limits. Protocol, at 2490. To do this effectively the IPHC separates the northern Pacific Ocean into eleven regulatory areas and sets limits on season openings, as well as on the size and quantity of

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

halibut taken from these areas. *See id.* at 2491. Regulatory area 3A, is at issue in this case.

During 1987, area 3A was open for halibut fishing on three occasions: a 24–hour period from May 4 to May 5, a 24–hour period from June 1 to June 2, and a 24–hour period from September 30 to October 1. All vessels participating in the September 30 halibut opening were limited to a catch size of 20,000 lbs., regardless of the vessel's size or capacity. This regulation was adopted by the Secretary of Commerce and is codified at 50 C.F.R. § 301.9(c) (1987).

Cameron is a commercial fisherman in Alaska. During the September 30, 1987 halibut opening, Cameron caught 961 halibut, weighing 34,269 lbs., in regulatory area 3A. His catch was 14,269 lbs. over the area trip limit of 20,000 lbs. The catch was sold for $52,318.40 in Seldovia.

Cameron was charged with unlawfully acquiring and transporting halibut with a market value of more than $350 and knowingly intending to sell the illegally taken halibut, in violation of the Lacey Act. As stated before, he entered a guilty plea conditioned on the appeal of whether the Lacey Act applies to the Commission's regulations on catch limits, and whether the regulation was promulgated in excess of the Commission's authority. The court sentenced him to pay a substantial fine, to abstain from violating fishing laws, and to pay a special assessment of $25.00.

## II.

Both issues presented turn on an interpretation of the international Protocol and two federal statutes. The Protocol provides in relevant part:

[T]he [International Pacific Halibut] Commission, ... may ...

(a) divide the Convention waters into areas;

(b) establish one or more open or closed seasons as to each area;

(c) limit the size of fish and the quantity of the catch to be taken from each area

within any season during which fishing is allowed....

Protocol, at 2490–91. The Halibut Act provides:

It is unlawful—

(a) for any person subject to the jurisdiction of the United States—

.　　.　　.　　.　　.

(5) to ship, transport, offer for sale, sell, purchase, import, export or have custody, control or possession of, any fish taken or retained in violation of the Convention, this subchapter, or any regulation adopted under this subchapter....

16 U.S.C. § 773e(a)(5).

Any person who is found by the Secretary, ... to have committed an act prohibited by section 773e of this title shall be liable to the United States for a civil penalty. The amount of the civil penalty shall not exceed $25,000 for each violation.

16 U.S.C. § 773f(a).

A person is guilty of any (sic) [criminal] offense if he commits an act prohibited by section 773e(a)(2), (3), (4), or (6) of this title; or section 773e(b) of this title....

16 U.S.C. § 773g(a). The Lacey Act, provides:

It is unlawful for any person—

(1) to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken or possessed in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law;

16 U.S.C. § 3372(a)(1).

Any person who—

.　　.　　.　　.　　.

(B) violates any provision of this chapter ... by knowingly engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350,

knowing that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or

regulation, shall be fined not more than $20,000, or imprisoned for not more than five years, or both.

16 U.S.C. § 3373(d)(1)(B).

### III.

■ Cameron admits he committed the acts of which he is accused. He argues, however, that committing the acts was not a crime because his conduct was not subject to Lacey Act criminal prosecution.

He advances four arguments in support of his position. First, he claims that Congress exempted the sale, shipment or transportation of halibut from criminal penalties under the Halibut Act, because Congress intended that only civil penalties apply to such conduct. Next, he contends that the Lacey Act was enacted to strengthen existing wildlife laws, and was not intended to apply to federal statutes that already had stringent enforcement provisions, like the Halibut Act. Then, he claims that the disclaimer provision of the Lacey Act excludes conduct governed by the Halibut Act. And finally, he argues that because the Lacey Act and the Halibut Act govern exactly the same conduct, the Halibut Act takes precedence.

### A.

The Halibut Act criminalizes certain conduct, but does not criminalize the shipment, transportation, or sale of halibut taken in violation of the Act or any regulation passed pursuant to the Halibut Act. 16 U.S.C. § 773e(a)(5); see 16 U.S.C. 773g(a). Instead, the Act provides for stringent civil penalties. 16 U.S.C. § 773f(a) (civil penalty up to $25,000 per violation). Cameron argues that this indicates that Congress intended to exclude the taking of halibut from any and all criminal penalties.

The government argues, and we agree, that the lack of criminal penalties in the Halibut Act, does not indicate that Congress intended shipment, transportation or sale of halibut, to be free from all criminal consequences. The Lacey Act, amended in 1981, had been in full force for a year before the 1982 Halibut Act was enacted to

replace its predecessor statute, the Northern Pacific Halibut Act of 1937. Had Congress intended that violations of the Halibut Act be exempt from enforcement under the Lacey Act, it could have said so in the Halibut Act, or it could have amended the Lacey Act. Portions of the Magnuson Fishery Conservation and Management Act of 1976, are specifically exempted from the Lacey Act. 16 U.S.C. §§ 1801–1882; see *United States v. Doubleday*, 804 F.2d 1091 (9th Cir.1986) (violations regulated by a Magnuson Fishery Management Plan are not subject to prosecution under the Lacey Act), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987). The Halibut Act is silent as to whether the Lacey Act affects Halibut Act penalties.

In addition, the conduct regulated by the penalty section of the Halibut Act is of a different caliber than that regulated by the Lacey Act. Taking halibut in violation of the Halibut Act is a strict liability offense. *See* 16 U.S.C. § 773e(a)(5). But to violate the Lacey Act, halibut must be taken with scienter or knowledge for the conduct to constitute a criminal offense. 16 U.S.C. § 3373(d)(1)(B). It is reasonable to suggest that Congress may have intended that the less culpable offense of taking halibut, with or without knowledge, be subject to the lesser penalty of civil consequences, than the more culpable crime of taking halibut with knowledge. Offenses requiring proof of actual knowledge generally provide for punishment more severe than strict liability offenses. In any event, the lack of criminal penalties for violating the Halibut Act does not in itself indicate Congressional intent to exculpate such conduct from criminal penalties under other statutes.

### B.

Cameron next argues that the Lacey Act is not implicated when the underlying statute has stringent enforcement provisions because the Act was intended to bolster environmental laws with weak enforcement provisions. *See e.g., United States v. Rioseco*, 845 F.2d 299 (11th Cir.1988) (foreign law); *United States v. Shelhammer*, 681

F.Supp. 819 (S.D.Fla.1988) (foreign law); *United States v. Doyle,* 786 F.2d 1440 (9th Cir.), *cert. denied,* 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986) (state law); *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (tribal law). He emphasizes that the enforcement provisions of the Halibut Act are similar to, and as severe as, those of the Magnuson Fishery Management Act of 1976, an act not subject to the Lacey Act's criminal enforcement provisions. This argument does not persuade us for several reasons.

The argument ignores this court's discussion in *United States v. Doubleday,* 804 F.2d 1091 (9th Cir.1986), *cert. denied,* 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987). There, a fishing boat owner and operator fished for, caught and sold halibut from an unauthorized area in Alaskan waters. The question presented was whether the Magnuson Fishery Conservation and Management Act or the Lacey Act governed his conduct. We ruled that the Magnuson Act does not directly regulate halibut fishing and, therefore, the Lacey Act controlled. In so ruling, we implicitly upheld the application of the Lacey Act to conduct that is essentially the same as Cameron's. The *Doubleday* defendant transported halibut taken in violation of a regulation promulgated by the Halibut Commission and subsequently adopted by the Secretary of Commerce. Cameron is accused of the same type of conduct. *See id.* at 1092, 1094 n. 3 (in dicta, the court recognized that the Halibut Commission regulates halibut fishing).

Cameron is correct in noting that the enforcement provisions of the Magnuson Fishery Conservation and Management Act are similar to those of the Halibut Act. But, not all conduct regulated by the Magnuson Act is exempt from Lacey Act prosecution. Only activity regulated by a Magnuson fishery management plan is exempted. *See id.* at 1094. Therefore, there can be conduct regulated by the Magnuson Act that is also regulated by the Lacey Act. Also, in amending the Lacey Act in 1981, Congress chose to exempt portions of the Magnuson Act from its coverage. It did not choose to exempt portions of the predecessor statute of the Halibut Act, the Northern Pacific Halibut Act of 1937.

We concede that the enforcement provisions of the 1937 Halibut Act were much less stringent than those of the 1982 Act. But such a concession is irrelevant. The brute fact is that when Congress enacted the 1982 provisions, it did not exempt the Halibut Act from provisions of the Lacey Act. We must proceed on the assumption that Congress intended what would be exempt and what would not.

### C.

Cameron next argues that the disclaimer provision of the Lacey Act, 16 U.S.C. § 3378(c)(1), precludes prosecution for conduct governed by the Halibut Act: "Nothing in this chapter shall be construed as (1) repealing, superceding, or modifying any provision of Federal law...." He argues that if this court finds the Lacey Act governs his conduct, then the Lacey Act will be "superceding or modifying" the Halibut Act, a provision of federal law.

We need not address this concept anew because we have previously interpreted a portion of the disclaimer provision of the Lacey Act, 16 U.S.C. § 3378(c)(2). *United States v. Sohappy,* 770 F.2d 816 (9th Cir. 1985), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986). We believe that by analogy the same analysis applies here. In *Sohappy* a native American was prosecuted under the Lacey Act for violations of tribal fishing laws. The defendant argued that to enforce the Lacey Act against him for this conduct would be to violate the tribe's treaty reserved right to regulate fishing. He contended that this was prohibited by section 3378(c)(2) of the Lacey Act:

Nothing in this chapter shall be construed as—

.  .  .  .  .

(2) repealing, superceding, or modifying any right, privilege, or immunity granted, reserved, or established pursuant to treaty, statute, or executive order

pertaining to any Indian tribe, band, or community....

16 U.S.C. § 3378(c)(2). We held that the treaty did not reserve to the tribe exclusive jurisdiction to control fishing and that, therefore, the Lacey Act applied to defendant's conduct. The court recognized that the Lacey Act functions to create new offenses for trafficking in fish taken in violation of tribal law.

The disclaimer provision at issue in *Sohappy* is a subsection of the same Lacey Act section that Cameron argues exempts his conduct. 16 U.S.C. §§ 3378(c)(1), 3378(c)(2). Language of the two subsections of the disclaimer provision is similar, but not identical. The exemption pertaining to tribal law is broader than the exemption pertaining to federal law. But what is important about *Sohappy* is our court's recognition that two statutes can govern the same conduct, without running afoul of the disclaimer provision of the Lacey Act. *See Sohappy*, 770 F.2d at 818–20. *Sohappy* teaches that the Lacey Act and another statute or law, can govern identical conduct and yet have different enforcement provisions. The Lacey Act is not interpreted as "repealing, superceding, or modifying" the other law, unless the other law reserves exclusive control over the conduct at issue. Neither the Halibut Act nor the Protocol reserve exclusive control over halibut fishing. *See* Protocol, at 2488–89; 16 U.S.C. §§ 773–773k; *see also, Doubleday*, 804 F.2d at 1094 (the Magnuson Act controls the incidental catch of halibut).

This reading of *Sohappy* is consistent with Congressional intent. The Lacey Act was designed to strengthen and support existing wildlife laws. *See* Council on Environmental Quality, The Evolution of National Wildlife Law, S.Rep. No. 123, 97th Cong., 1st Sess. 2, 4, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1748, 1751. To fulfill its purpose, the Act must be applied to conduct that is also regulated by an existing treaty, state or federal law, regulation or tribal law. The grand purpose of fish, wildlife, and plant protection by the federal government would be severely dissipated by an exaggerated reading of the disclaimer provision.

### D.

Finally, Cameron argues that because the Lacey Act and the Halibut Act are both penal statutes, and because ambiguity exists in the two statutes, the rule of lenity should apply. And if we apply the lenity doctrine, only the Halibut Act should control defendant's conduct. *See Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980); *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Although Cameron's authorities support his position, the argument must fail because the lenity rule comes into play only when ambiguity is present. We see no ambiguity here. The Halibut Act creates a civil penalty for the strict liability offense of transporting or selling Halibut taken in violation of IPHC regulations. 16 U.S.C. § 773e(a)(5). The Lacey Act criminalizes the intentional violation of certain federal wildlife laws. 16 U.S.C. § 3372(a)(1). The two laws are not ambiguous.

Accordingly, we hold that a prosecution under the Lacey Act is authorized for a violation of a regulation of the Halibut Commission.

### IV.

We now turn to Cameron's contention that the Commission lacked the power to promulgate a regulation limiting a day's catch to 20,000 lbs. of halibut. He argues that such power rests in regional councils and not in the Commission and that the IPHC has no authority to regulate halibut fishing in a way that is unfairly prejudicial to a particular individual, corporation, or other entity.

### A.

Cameron contends that the right to regulate fishing privileges among United States fishermen belongs to Regional Fishery Management Councils, not to the Halibut Commission. Section 773c(c) of the Halibut Act provides:

The Regional Fishery Management Council having authority for the geographic area concerned may develop regulations governing the United States portion of Convention waters, including limited access regulations ... which are in addition to, and not in conflict with regulations adopted by the *Commission* .... [As long as] no particular individual, corporation, or other entity acquires an excessive share of the halibut fishing privileges....

16 U.S.C. § 773c(c) (emphasis added). We believe that Cameron misreads the statute.

Section 773c(c) itself anticipates that regulations will be adopted by the International Pacific Halibut Commission. *Id.* The "Commission" referred to in the text of the Halibut Act is the IPHC. 16 U.S.C. § 773(b). In addition, the Protocol vests the IPHC with the power to:

(a) divide the Convention waters into areas;

(b) establish one or more open or closed seasons as to each area;

(c) limit the size of the fish and the quantity of the catch to be taken from each area within any season during which fishing is allowed

....

Protocol, at 2490–91. The limit on this power is that the regulations must be with the approval of the United States and Canada, *see* 16 U.S.C. § 773b, consistent with the Annex to the Protocol, Protocol, at 2493–2500, and for the purpose of developing the maximum yield of halibut stocks in the Pacific Ocean and Bering Sea, Protocol, at 2490. The regulation at issue in this case was agreed to by the United States, 50 C.F.R. § 301.9(c) (1987), consistent with the Annex to the Protocol, and was a conservation measure, *see* S.E.R. at 1–2. Robert McVey, a member of the IPHC, testified that the area trip limit was "purely a conservation measure." *Id.* at 2.

### B.

Cameron's final argument is that even if the IPHC has the authority to regulate halibut fishing, it does not have the authority to regulate the fishing in a way that is unfairly prejudiced against a "particular individual, corporation, or other entity." *See* 16 U.S.C. § 773c(c) (a statutory provision that pertains only to Regional Fishery Management Councils). Even if we were to hold that the fairness requirement codified in section 773c(c) applies to the IPHC regulations, the 20,000 lb. trip limit provision does not trench upon the fairness concept.

The September trip limit did not unfairly prejudice owners of larger boats like that of Cameron's. There were three fishing openings in area 3A in 1987 and only one of these three openings had a trip limit size. On the contrary, to adopt Cameron's argument, the May and June openings without trip limits could be said to disadvantage smaller boat owners, who, because of a lesser capacity in their boats would be unable to catch as much halibut as the larger boat owners. Even though intended as a conservation measure only, the trip limit of the September opening functioned to make the halibut fishing regulations more equitable for all persons for the year 1987, irrespective of the boat size. On balance, we cannot say that the trip limit unfairly prejudiced owners of large boats like the one owned by Cameron.

### V.

■ Special assessments have been declared unconstitutional in this circuit. *United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988). The district court imposed a $25.00 special assessment on defendant Cameron. This portion of defendant's sentence is vacated.

### VI.

Upon consideration of all the contentions raised by the appellant, we conclude that the judgment of the district court is AFFIRMED in part and VACATED in part.