UNITED STATES of America, Plaintiff,

v.

**Robert GUILMARTIN, Defendant.**

**No. 88 Cr. 735 (CLB).**

United States District Court,
S.D. New York.

Dec. 26, 1989.

Otto G. Obermaier, U.S. Atty. by Anthony J. Siano, White Plains, N.Y., for plaintiff.

Robert Guilmartin, pro se.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On October 24, 1988, Robert Guilmartin pleaded guilty to one count of Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846. On February 8, 1989, he was sentenced under the Sentencing Reform Act ("Guidelines") to eighteen (18) months imprisonment and a three (3) year term of supervised release. This sentence represented a downward departure on motion of the Government.

Now, by motion docketed September 24, 1989, Mr. Guilmartin seeks to vacate as unlawful the part of the sentence that imposed the term of supervised release which he apparently equates with "special parole" within *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), discussed below.

At the time of sentencing, the Guidelines required this Court to treat Mr. Guilmartin's conviction for conspiracy to distribute cocaine, *see* 21 U.S.C. § 846, as if it were a conviction for actual distribution, *see* 21 U.S.C. § 841. Under § 2D1.4 comment. (n.1), the Guidelines stated:

> If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level *shall* be the same as if the object of the conspiracy or attempt had been completed. [Emphasis added.]

This Guidelines provision, which became effective on November 1, 1987, eliminates any distinction for purposes of sentencing between distribution, § 841, and conspiracy, § 846. Furthermore, a supervised release is applicable because 18 U.S.C. § 3583(a) and (b) provide generally for a maximum period of five years' supervised release for "Class B" felonies. Since the maximum term of imprisonment for movant's offense was forty (40) years, *see* 21 U.S.C. § 846 *per* 21 U.S.C. § 841(b)(1)(B), the offense is a Class B felony. *See also* 18 U.S.C. § 3559.

Prior to the Guidelines, however, the penalty terms of the distribution and conspiracy provisions were quite different. Under the distribution provision, § 841, courts were required to impose minimum mandatory "special parole" terms if any term of imprisonment was imposed. By contrast, under § 846, the conspiracy provision, courts were instructed that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter"—*e.g.*, distribution of cocaine under § 841—"is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense ..." The conspiracy provision made no mention of "special parole," providing instead for "imprisonment or fine or both."

In *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the Supreme Court held that § 846, unlike § 841, does not authorize the imposition of special parole terms upon those convicted of conspiracy. Relying on the plain language of the two provisions as well as legislative history suggesting an intention to differentiate between the two offenses, the Court found that the absence of a special parole provision in § 846 "was not a slip of the legislative pen, nor the result of inartful draftsmanship, but was a conscious and not irrational legislative choice." *Id.* at 400, 100 S.Ct. at 2259. The Court also observed in dictum that "to the extent that doubts remain, they must be resolved in accord with the rule of lenity." *Id.* [footnote omitted].

The *Bifulco* decision, of course, predates the Sentencing Reform Act. It is not inconsistent with *Bifulco* to find that, though initially different at least insofar as imposition of terms of special parole is concerned, §§ 841 and 846 have been coextensive in their penalty terms since the effective date of the federal Guidelines. Surely it cannot be disputed that the Guidelines treat substance distribution and conspiracy interchangeably for purposes of calculating the so-called "base offense level." *See* § 2D1.4(a) *supra.* It therefore seems reasonable to conclude that the Guidelines made substantive revisions to *both* §§ 841 and 846: they *substituted* "supervised release" for "special parole" in § 841, while *adding* "supervised release" to the penalties available under § 846.

A difficulty with this analysis is that by an amendment effective in January of 1989, Congress specifically declared that the penalty terms of § 846 should thereafter be coextensive with those of § 841. *See* 21 U.S.C. § 846 (As amended Pub.L. 100–690, Title VI, § 6470(a), November 18, 1988, 102 Stat. 4377). Had the Guidelines already accomplished as much, it is at least arguable that such an amendment to Title 21 would have been unnecessary. The question, therefore, is whether at the time of Mr. Guilmartin's sentencing, the penalty terms of § 846 were, by virtue of the operation of the Guidelines, the "same as those prescribed for [§ 841]." If not, the supervised release provided for under the Guidelines may be inconsistent with the earlier version of § 846, which, by its terms and under *Bifulco*, authorizes only sentences of "imprisonment or fine or both." Thus, the next question posed by defendant's motion is this: If the Guidelines had already modified the penalty provisions of § 846, what was the purpose of Congress' November 18, 1988 amendment?

While this argument is of academic interest, it presumes a highly unlikely degree of familiarity with the details of Guideline sentencing on the part of Congress. The Guidelines revised a vast number of federal penal statutes indirectly—by reducing judicial discretion, standardizing sentences, and equalizing the presumptive penalties applicable to different substantive crimes. One can hardly claim at this late date that Congress did not intend such sweeping revision and codification. *See Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the Guidelines and discussing their broad-based departure from previous sentencing schemes).

Moreover, the rule of lenity mentioned in *dicta* by the Supreme Court in *Bifulco* is applicable only in the case of an ambiguity and does not apply where, as here, the Guidelines expressly state that "supervised release" may be imposed upon persons con-

victed of any federal controlled substance conspiracy. In cases where Congress is silent—or where review of the legislative history reveals a legislative decision to disallow particular penalties—the rule of lenity set forth in *Bifulco* is nothing less than constitutionally required. But where, as here, Congress has specifically authorized terms of "supervised release," the interests served by the rule of lenity are not implicated. It matters little whether, at the time movant committed the crime for which he was sentenced, Congress expressed its judgment in the form of Sentencing Guidelines or in the form of an amendment to the statute itself. In either event, the will of Congress was made known, and individuals were able to conform their conduct to the requirements of the law with full awareness of the consequent penalties should they fail to do so.

One final point requires discussion. It is true, of course, that Congress did not affirmatively enact Guideline provisions such as the one here at issue. Instead, Congress ratified the Guidelines by acquiescence, letting provisions drafted by the Sentencing Commission acquire the force of law. Determinations as to the relative severity of particular crimes were made initially by the Sentencing Commission and only later were reviewed by Congress and agreed to by legislative inaction. This might seem a somewhat disquieting way of passing penal laws, even where the expertise of non-legislators may be required. Perhaps we should be cautious in assuming that such an enactment by acquiescence will modify or amend an existing statute and nullify a recent Supreme Court decision interpreting that statute. *See* U.S. Const. Art. I, Sec. 7 (the requirement of bicameral passage and presentment to the President); *cf. INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (striking down a unicameral legislative veto provision). As much as this may appear to be a reasonable position in light of the overall architecture of the federal Constitution, the Supreme Court quite plainly has rejected it in *Mistretta, supra.*

In *Mistretta,* the Court upheld the Guidelines in the face of a challenge founded upon both the non-delegation doctrine and separation of powers concerns. After noting that "the [Sentencing] Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit either within the 180–day waiting period, *see* § 235(a)(1)(B)(ii)(III) of the Act, 98 Stat. 1837, 2031, or at any time," the Court concluded that it was Congress—not the Sentencing Commission—which had exercised the lawmaking power which gave rise to the Guidelines. The Court concluded that the Sentencing Reform Act constituted a limited, necessary and controlled delegation to a nonlegislative entity; it did not divest Congress of its legislative power and responsibility. This reasoning, especially within the context of a detailed review of the constitutionality of the Guidelines, leaves us with no doubt that Congress' passive ratification of the Guidelines nevertheless invested those provisions with the full force of law. Any contrary conclusion strains the logic of the *Mistretta* decision beyond recognition.

As a matter of law, I conclude that Congress amended the penalty terms of § 846 when it first passed the Guidelines. The subsequent statutory amendment to § 846 itself added nothing, except to eliminate any confusion that might have ensued from a failure to understand the Guidelines. Movant's sentence was fully consistent with the applicable Guidelines when imposed and lawful in all respects. Accordingly, Mr. Guilmartin's motion to vacate his term of "supervised release" is denied.

SO ORDERED.