**UNITED STATES of America, Plaintiff,**

v.

**Kenneth WALLENDORF, Defendant.**

**No. 87 CR 939.**

United States District Court,
N.D. Illinois, E.D.

May 9, 1990.

Kenneth Wallendorf, pro se.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Kenneth Wallendorf ("Wallendorf") has just transmitted two letters to this Court

1. In response to an earlier motion by Wallendorf, this Court issued its January 5, 1990 memorandum opinion and order (the "Opinion", 1990 WL 6663) denying Wallendorf relief under Rule 35(b). Opinion at 1 n. 1 mistakenly assumed that Wallendorf's offense of conviction had been committed *before* November 1, 1987 (that assumption had been made by this Court's having referred only to the partial file it retains in chambers, rather than to the official court file itself—and because the indictment itself and Wallendorf's plea agreement were not part of that retained file, this Court's conclusion was based solely on inferences drawn from the number of the case and from the usual interval that elapses between commission of an offense and the submission of the proposed indictment to a grand jury). In connection with the current filings by Wallendorf, however, this Court has retrieved and reviewed the official court files (a process somewhat complicated by the existence of three separate file folders containing the record transmitted to the Court of Appeals in connection with the appeal by co-defendant Ronald Cappuzzo). It has confirmed that:

seeking relief from the sentence previously imposed on him (attached Ex. 1, a letter dated April 21, 1990 and received April 25, and Ex. 2, a letter dated May 2 and received May 7). Because Fed.R.Crim.P. ("Rule") 35(b) is not applicable in this situation,[1] both transmittals will be treated as motions for relief under 28 U.S.C. § 2255 ("Section 2255"[2]).

In Ex. 1 Wallendorf moves to vacate or set aside the three-year supervised release term imposed by this Court to follow the custodial portion of the three-year sentence that Wallendorf is now serving in the custody of the Attorney General. Wallendorf seeks that relief because the only charge to which he pleaded guilty was one of conspiracy under 21 U.S.C. § 846 ("Section 846").

By way of background in that respect, on July 5, 1988 Wallendorf and his counsel entered into a plea agreement with the government under Rule 11(e)(1)(C), calling for (1) a specified term of three years in custody (a downward departure under the sentencing guidelines because of Wallendorf's cooperation) to be followed by (2) a four-year supervised release term (Ex. 3 ¶ 14). At the time of sentencing on July 29, 1988 this Court accepted the plea agreement and imposed precisely that sentence.

1. In fact the offense to which Wallendorf pleaded guilty was a conspiracy knowingly and intentionally (a) to possess cocaine with the intent to distribute it and (b) to distribute cocaine on November *30,* 1987 (see Ex. 3, Wallendorf's plea agreement).

2. That being the case, the sentence was properly imposed under the Comprehensive Crime Control Act of 1984 (including the sentencing guidelines), which ultimately took effect as to offenses committed after November 1, 1987.

That means the Opinion was incorrect in considering Wallendorf's Rule 35(b) motion, because the scope of Rule 35 was narrowed drastically as to post-November 1, 1987 offenses. But that error proved harmless, because the Opinion rejected the motion on the merits in any event.

2. As will be seen later in this opinion, the "Section—" shorthand designation will be used for statutory provisions that emanate not only from Title 28 but also from Titles 18 and 21. That should not lead to any confusion because of the total dissimilarity of the section numbers involved.

But less than a month later this Court sua sponte entered an August 17, 1988 order (Ex. 4) reducing the supervised release term from four years to three years, because three years then represented the maximum period of supervised release that could have been imposed pursuant to 18 U.S.C. § 3583(a) ("Section 3583(a)") and 3583(b)(1) ("Section 3583(b)").

■ To return to the substance of Wallendorf's motion, he has made a quite understandable mistake in his now-stated belief that supervised release was not a proper component of a sentence for violation of the Section 846 conspiracy statute. *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) held that no "special parole term" (the statutory predecessor to supervised release) could be imposed under Section 846, even though such a sentence component was entirely appropriate for violation of the substantive offense defined in 21 U.S.C. § 841(a) ("Section 841(a)"). And as our Court of Appeals has just said in *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir.1990) (footnote and citation omitted):

> Thereafter, courts routinely vacated terms of special parole and mandatory minimum penalties from the sentences of defendants convicted specifically on a § 846 conspiracy count.

Indeed, *McNeese, id.* at 602 n. 8 also gives examples of cases that for the same reason have vacated supervised release terms erroneously imposed for Section 846 violations.

To see the error in Wallendorf's understanding, it is necessary to give careful consideration to the relevant statutes here in terms of the specific dates involved. In the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, Title VI, § 6470(a), 102 Stat. 4181, 4312, 4377 (1988) Congress amended Section 846 (making explicit reference to *Bifulco*) so as to make the mandatory minimum sentences and special parole terms

under Section 841(a) applicable under Section 846 as well (see *McNeese*, 901 F.2d at 602 n. 6 and 603). That amendment could not of course apply to Wallendorf's offense committed in November 1987 (because of obvious ex post facto implications). But before enacting that amendment to Section 846, Congress had already amended Section 3583(a)—effective as to all offenses committed after November 1, 1987—to permit the inclusion of a term of supervised release after imprisonment as to *every* felony or misdemeanor. By definition that included Section 846 conspiracy charges, in the same way that it included any other criminal offense.

This Court's search of the relevant authority discloses only one case treating with this specific problem: *United States v. Guilmartin*, 727 F.Supp. 134 (S.D.N.Y. 1989).[3] Chief Judge Brieant's opinion in that case reaches the identical result expressed here on precisely the same reasoning, and that opinion should be referred to for a more expansive discussion of what this Court has just set out in abbreviated form. Accordingly the first element of Wallendorf's motion must be and is denied, for the supervised release portion of his sentence was properly imposed under the law that applied to his offense at the time he committed it.

■ As for Wallendorf's second motion (Ex. 2), it stems from another misunderstanding on his part—a somewhat different one—as to the terms of his sentence. Because that sentence was imposed under the new sentencing regime established by the sentencing guidelines and the revised underlying statutory structure, there is no provision for *parole* applicable to Wallendorf's sentence. It is for the Bureau of Prisons and not for this Court to determine the length of time that Wallendorf must actually spend in custody under the agreed-upon three-year sentence specified in his plea agreement, implemented by this

---

**3.** Somewhat surprisingly, *United States v. Barry*, 895 F.2d 702 (10th Cir.1990)—though it posed the same issue—simply assumed the propriety of a supervised release component of a sentence for a Section 846 violation committed in 1988, after the November 1, 1987 effective date of the sentencing guidelines and accompanying statu-

tory changes and before the November 18, 1988 effective date of Pub.L. 100–690. All that *Barry* spoke to was the sentencing guidelines' reference to supervised release as applicable to offenses generally, without examining whether that was statutorily authorized as to Section 846 violations in particular.

Court's sentence approving that plea agreement. Accordingly this Court may not provide any relief on the second branch of Wallendorf's current request.

given the sequence of statutory changes and the different effective dates that must be looked at. What *is* clear is that this Court is not in a position to afford Wallendorf relief in either respect he now seeks, and both his current motions are denied.

### Conclusion

Wallendorf has demonstrated a degree of misunderstanding that is hardly surprising,

87CR939-4

APPENDIX

4-21-90

EXHIBIT 1

Dear Judge Shadur,

Would you please except this letter as a motion to vacate or set aside my three years supervised release. My case number is 87 CR 939 - 4. I pleaded guilty to count one of the indictment; title 21 USC 846 conspiracy. There is nothing under the conspiracy laws that allows for supervised release after a term of imprisonment.

Sincerely,

Kenneth Wallendorf.

RECEIVED

APR 25 1990

MILTON I. SHADUR, JUDGE
UNITED STATES DISTRICT COURT

67 CR 454-4

EXHIBIT 2

5- RECEIVED

MAY 0 7 1990

MILTON I. SHADUR, JUDGE
UNITED STATES DISTRICT COURT

Dear Judge Shadur,

The parole board is meeting at Milan on or about the third week in May. The next parole hearing will be in July and so on.

Since my complete cooperation with the prosecuting attorney and the circumstances surrounding my offense are mitigating, I know my release from prison would have been the one-third date or 12 months if I was allowed to see the parole board. Because of the misinterpretation of my judgement and committal papers by the Bureau of Prisons, I have served 30 months (to date) on a three (3) year paroleable sentence.

Could the Honorable Judge please clarify my sentence or issue a letter of explaination why my three year sentence is on J+C papers of the 1984 reform act. According to the "Bureau" three years or 36 months is the same and I was sentenced under the CCCA law.

With the parole board meeting every other month, an expiditious response from your chambers would greatly be appreciated. Thankyou for your time and patience with me.

copy to
Tibensky

Sincerely,

Kenneth Wallendorf

EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

JUL ᵕ 1988

Milton I. Shadur, Judge
United States District Court

UNITED STATES OF AMERICA DOCKETED )

vs.                        JUL 6 1988    No.   87 CR 939
                                        )
KENNETH WALLENDORF                      )

PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by ANTON R. VALUKAS, United States Attorney for the Northern District of Illinois, and the defendant, KENNETH WALLENDORF, and his attorney, SHEILA MURPHY, have agreed upon the following:

1.    Defendant acknowledges that he has been charged in the indictment in this case with violations of Title 21, United States Code, Sections 841(a)(1) and 846.

2.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.    Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5.    Defendant will plead guilty because he is in fact guilty of the charges contained in Count One of the indictment.  In pleading guilty to this count, defendant acknowledges that:

(a)    As charged in Count One of the indictment, on or about November 30, 1987 at Chicago and Lincolnwood and elsewhere, Kenneth Wallendorf conspired to knowingly and intentionally possess with intent to distribute and distribute cocaine, a Schedule II Narcotic Drug Controlled Substance.  In furtherance of the conspiracy, Kenneth Wallendorf met with DEA Special Agents Thomas Kelly and Patricia Collins at a Wendy's Restaurant at the intersection of Western Avenue and Addison Avenue in Chicago, Illinois in order to finalize the arrangements for the sale of the two kilograms of cocaine.

In furtherance of the conspiracy, Kenneth Wallendorf met with Ronald Cappuzzo and Glenn Wojda and Special Agents Thomas Kelly and Patricia Collins at a 7-11 store at the intersection of Western Avenue and Devon Avenue, Chicago, Illinois and discussed the sale and delivery of the two kilograms of cocaine.

~~In furtherance of the conspiracy, during this meeting~~ Kenneth Wallendorf told the agents that Ronald Cappuzzo ~~would have to count the money before~~ the cocaine would be turned over.

In furtherance of the conspiracy, after Ronald Cappuzzo had counted the money, Santiago Garcia and Escenober Calderon-Murillo met with Ronald Cappuzzo, Kenneth Wallendorf and Glenn Wojda and Special Agents Thomas Kelly and Patricia Collins at a Dunkin' Donuts restaurant parking lot in order to decide where the delivery of the two kilograms of cocaine should be made.

6. Defendant understands the count to which he will plead guilty carries the following penalties:

(a) Count One carries a maximum penalty of 40 years imprisonment and a maximum fine of $2,000,000.

(b) Defendant understands that Count One also carries a term of supervised release of at least four years, and up to any number of years, including life, which the court may specify in addition to such term of imprisonment.

Therefore, the total potential sentence carried under the counts to which defendant will plead guilty is 40 years imprisonment and a $2,000,000 fine, as well as any restitution ordered by the Court.

7. The defendant understands that in accord with federal law, 18 U.S.C. § 3013, upon entry of judgment of conviction, the defendant will be assessed $50 on each count to which he has pled, in addition to any other penalty imposed.

8. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of

either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt, and that it was to consider each count of the indictment separately.

(c)   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d)   At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e)   At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

9.   Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.

10.   Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

11.   The defendant agrees he will cooperate fully with the government in any investigation in which he is called upon to cooperate that is related to or results from the charges in this case. Defendant agrees to provide complete and truthful information to government investigators, including truthful testimony, if called upon to testify, at any United States District Court proceeding.

12.   Defendant understands that the United States Attorney reserves the right to notify any state or federal agency by whom defendant is licensed, or with whom defendant does business, of defendant's conviction.

13. At the time of sentencing, the government will move the Court pursuant to guideline 5K1.1 to depart from the applicable sentencing guideline range, and to impose the specific sentence agreed to by the parties as outlined in paragraph 14 herein. The defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

The defendant understands that the provisions of this paragraph govern the sentencing recommendation only during the Rule 32 (or initial) sentencing proceeding, and do not apply or limit the government in the event the defendant subsequently moves to reduce or modify his sentence.

14. Pursuant to Federal Rules of Criminal Procedure 11(e)(1)(c), the government and the defendant agree that a specific sentence of incarceration in a penal institution for a term of three years and a term of supervised release of four years is the appropriate disposition of this case. It is understood by the parties that the sentencing judge is neither a party to nor bound by this agreement. In the event the court rejects this agreement, it shall become null and void, neither party shall be bound thereto and the defendant shall have the opportunity to withdraw his plea.

15. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement, to cause defendant to plead guilty. Defendant understands that his compliance with each part of this plea agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the plea agreement is a violation of the agreement rendering it null and void. Defendant further agrees this plea agreement shall be filed and become a part of the record in this case.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment.

17. Should the judge refuse to accept the defendant's plea of guilty, this agreement shall become null and void and neither party will be bound thereto.

AGREED THIS DATE: ___7 - 5 88___

_____
ANTON R. VALUKAS
United States Attorney

_____
KENNETH WALLENDORF
Defendant

_____
MICHAEL T. MULLEN
Assistant United States Attorney

_____
SHEILA MURPHY
Attorney for Defendant

EXHIBIT 4

United States District Court

For The

Northern District of Illinois

Eastern Division

No. 87 CR 939–4

Docketed Aug. 19, 1988

United States of America

v.

Kenneth Wallendorf

### ORDER

Under the plea agreement, in this case, defendant Kenneth Wallendorf agreed to be sentenced to a four-year period of supervised release following the actual time served on an agreed three-year sentence to the custody of the Attorney General. On July 29, 1988 this Court imposed a sentence in accordance with that agreement. However, because the guilty plea related only to Count One (a conspiracy count under 21 U.S.C. § 846), the maximum period of supervised release that could be imposed as of the date of defendant's commission of the offense was three years (see 18 U.S.C. § 3583(a) and 3583(b)(1), the latter section having since been modified to allow a five-year supervised release term).

This Court, acting sua sponte, therefore reduces the portion of defendant's sentence requiring a supervised release term from four years to *three* years.

/s/ Milton I. Shadur
Judge MILTON I. SHADUR