**Michele MAYES, Defendant, Appellant,**

v.

**CHRYSLER CREDIT CORPORATION, Plaintiff, Appellee.**

No. 93–1851.

United States Court of Appeals, First Circuit.

Heard March 10, 1994.

Decided Oct. 11, 1994.

Christopher C. Trundy, New Bedford, MA, for appellant.

Paul Marshall Harris with whom Lynne F. Riley and Powers & Hall, Boston, MA, were on brief, for appellee.

Before BREYER,* Chief Judge, TORRUELLA and BOUDIN, Circuit Judges.

BOUDIN, Circuit Judge.

In 1984, Jean Mayes purchased Albert L. Silva, d/b/a Rainbow Motors ("Rainbow Motors"), a Nantucket car dealership. In May 1985 he then entered into financing arrangements with Chrysler Credit Corporation ("Chrysler") to finance his car inventory. The "borrower" was to be Rainbow Motors, Jean Mayes being its president and sole shareholder.

To support the financing, Chrysler required not only Jean Mayes but also his wife, Michele Mayes, to sign a "Continuing Guaranty," a document imposing unconditional joint and several liability on the guarantors for the debts of Rainbow Motors to Chrysler. Michele Mayes was a well-compensated corporate attorney and also owned or co-owned land rented to Rainbow Motors. She assertedly did not participate in managing the dealership, although she was listed as a director and officer. Allegedly, it was Chrysler's practice to seek spousal guaranties as a matter of course.

Rainbow Motors thereafter accumulated a large debt to Chrysler and, in December 1990, Chrysler brought the present action against Rainbow Motors and Michele Mayes in the district court seeking payment of an outstanding debt of $750,126.41. Michele Mayes did not dispute the existence of the guaranty but pleaded waiver and estoppel as

affirmative defenses to Chrysler's claim against her. Michele Mayes did not assert any counterclaim.

A non-jury trial was held in the district court on May 25 and 26, 1993. In a brief memorandum and order on May 26, 1993, the district court said that Michele Mayes had not presented adequate evidence at trial to support her equitable defense of waiver or estoppel. The court also said that Mayes had argued at trial that the guaranty violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, but the court said that this defense had been waived because not asserted in the answer, and was in any event without merit. The district court entered judgment in favor of Chrysler and against both Rainbow Motors and Michele Mayes in the amount of $750,126.41. Michele Mayes alone has appealed.

We address first her principal argument, based on the Equal Credit Opportunity Act. Michele Mayes' brief does not respond directly to the district court's ruling that the statutory defense has been waived for failure to assert it in the answer. See Fed.R.Civ.P. 8(a). The indirect response appears to be two-fold: first, that the district court did resolve the issue on the merits; and second, that, at least in the indirect "public policy" version in which the defense is urged, it is embraced by the "estoppel" defense that was properly pleaded.

We have some doubt about either branch of this response. In its final decision, the district court prefaced its footnoted discussion of the merits by saying that it did not need to reach the issue. As for the estoppel defense, the answer merely said as an affirmative defense that Chrysler "because of its own actions" should be estopped, without identifying any such actions or mentioning the statute. Nevertheless, we think that Mayes has no defense on the merits and prefer to rest our decision on that ground.

■ The district court said that a violation of the statute could not be asserted as a defense but only as a counterclaim. There

* Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel's opinion.

The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

appears to be more than one view on this issue, but Michele Mayes does not challenge the ruling directly. Instead her brief responds that she has not argued "that there was a violation of the ECOA, but rather that the policy of the act should be applied to the guarantee by the Court sitting in equity." This rather awkward formulation, casting the defense as one of public policy, is apparently designed to meet yet another concern.

The Equal Credit Opportunity Act pertinently provides, in general terms, that a creditor may not "discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1). At the time Chrysler secured Mayes' guaranty in 1985, a regulation of the Federal Reserve Board—the then-operative version of 12 C.F.R. § 202.2(e)—expressly provided that a guarantor was not an "applicant." *See Morse v. Mutual Federal Savings & Loan Ass'n,* 536 F.Supp. 1271, 1278 (D.Mass.1982) (Aldrich, J.).

■ This regulation apparently reflected the Federal Reserve Board's understanding of the statute's original purpose. The statute was initially designed, at least in part, to curtail the practice of creditors who refused to grant a wife's credit application without a guaranty from her husband. *See Anderson v. United Finance Co.,* 666 F.2d 1274, 1277 (9th Cir.1982). Under the original Federal Reserve Board regulation, a wife (or a husband) who was denied credit because the spouse refused to guarantee the loan might have a cause of action, depending on the circumstances; but where the spouse did guarantee the loan, that spouse—not being an applicant—had no basis for a claim or any defense against collection.

Eventually the Federal Reserve Board revised its regulation, effective on October 1, 1986, extending the definition of an "applicant" to include "guarantors ... and similar parties." 12 C.F.R. § 202.2(e), adopted 50 Fed.Reg. 48026 (Nov. 20, 1985). Michele Mayes does not claim that the regulation applies retroactively to her case. *Cf. Boatmen's First National Bank v. Koger,* 784 F.Supp. 815 (D.Kan.1992) (holding that the regulation is not retroactive). Instead—to put the best face on her argument—she can be taken to urge that Chrysler's conduct was unlawful, both before and after the new regulation, even if a pre-October 1, 1986, guarantor had no standing to assert a direct claim under the statute. Public policy, in effect, is offered as a substitute for standing.

Assuming *arguendo* a violation by Chrysler, we think that Mayes' contention has some weight but not quite enough. If Chrysler's conduct in seeking the spousal guaranty was unlawful when the financing arrangement was made, Michele Mayes' defense would not directly affront the general precept that a party's conduct should be judged by the rules in effect when the conduct occurred. *See generally Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988). On the other hand, there remains a strong element of retroactivity in what Mayes seeks in this case, and her argument depends on a rather loose description of what was arguably unlawful in Chrysler's conduct.

At the time Chrysler made the financing arrangements in question and secured the guaranty, Chrysler might have had reason to believe that it should not seek the guaranty and might be liable to the *de facto* borrower (Jean Mayes) if it refused to extend credit to him without a spousal guarantee. But at that time the core of the conduct made unlawful was withholding or conditioning the loan to the borrower. Under the regulation as it then stood, Chrysler had no reason to think that it would be unable to collect on any spousal guaranty since the regulation said that the guaranteeing spouse was not a protected party.

The Federal Reserve Board has changed its position now, the guarantor is protected by the terms of the regulation, and Chrysler is now on notice that such a defense might be attempted. But we think it stretches public policy too far to bar Chrysler from collecting now on a guaranty made in 1985 when in 1985 its right to collect on the guaranty would not reasonably have been thought in doubt. Put differently, the regulation's change in "standing" is actually a surrogate for an enlarged view of what is unlawful about Chrysler's conduct.

One might imagine cases where a public policy that arises *after* the event is of such a force and character that it should be applied even to conduct that occurred prior to the new regime; after all, the presumption against retroactive statutes can be overcome when Congress provides for retroactivity. *E.g., Pension Benefit Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). But in this appeal we are given no reason to think that our case presents such a rare and exigent situation. Accordingly, we have no reason to consider Chrysler's defense of its conduct on the merits.

Two remaining claims of error can be answered quickly. First, Michele Mayes argues that Chrysler introduced irrelevant and prejudicial information into the proceeding by referring to the bankruptcy of her husband, by claiming that her statutory defense was belatedly pled, and by attempting to show that Chrysler had good reason for requiring her own guaranty in this instance. All of these matters are irrelevant to our own legal determination which is based on the fact that the guaranty predated the change in the regulation.

Second, Michele Mayes renews on appeal an argument that she has an equitable defense because Chrysler itself, by cutting off credit temporarily to Rainbow Motors in 1988, caused the financial hardships that led to its default on the debt. This argument rests entirely on the brief's central proposition that "the uncontroverted testimony of [Michele Mayes'] witnesses was that Chrysler Credit wrongfully withheld agreed upon financing for the 1989 selling season." Although there are no findings on this point, a brief review of the record shows that the situation is far more complicated than the "uncontroverted testimony" reference would suggest.

It appears that Chrysler also financed another dealership of Jean Mayes located in Hingham, Massachusetts, that the credit arrangements were in certain respects interrelated, and that the "hold" placed on Rainbow Motors' financing was connected to alleged problems with the Hingham dealership. Whether or not the cutoff of credit to Rainbow Motors was wrongful, wrongfulness was certainly not a conceded issue at trial. It is the obligation of one who appeals on such grounds to address the evidence. The treatment of this point offered in Michele Mayes' brief does not attempt the task.

*Affirmed.*