# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fif h Circuit

**FILED**

February 16, 2017

Lyle W. Cayce
Clerk

————

No. 15-20710

————

TINA ALEXANDER; SHEILA ALEXIS; EVELYN BAINES; SHAUNTAY
BENNINGS; NYO HAYGOOD; TABITHA HENRY; CHEYANNE JONES;
ROSLYN JONES; KENDRA WILLIAMS; KYSHIA WOODS; ZACHARY
BAYLOR; TRACEY KENNERLY,

      Plaintiffs - Appellants

v.

AMERIPRO FUNDING, INCORPORATED; AMEGY BANK NATIONAL
ASSOCIATION; WELLS FARGO BANK, N.A.,

      Defendants - Appellees

————————

Appeals from the United States District Court
for the Southern District of Texas

————————

Before JOLLY, BARKSDALE, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, was enacted, in relevant part, in order to "promote the availability of credit to all creditworthy applicants without regard to . . . the fact that all or part of the applicant's income derives from a public assistance program." *See* 12 C.F.R. § 202.1. The ECOA specifically makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit

No. 15-20710

transaction . . . because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2).

Plaintiffs are twelve individuals in the Houston, Texas, area who receive Section 8 housing assistance.[1] Each plaintiff wanted to purchase a home, and each wanted to obtain a mortgage in order to finance their proposed purchase of a home. Each plaintiff either applied for a mortgage or sought information regarding a mortgage from either AmeriPro Funding, Inc., or Wells Fargo Bank, N.A.

Wells Fargo, they allege, was engaged in the business of investing in or buying mortgages originated by other financial institutions, including AmeriPro. AmeriPro, as an originator, interacted with borrowers, made credit decisions, and actually gave mortgages to home buyers. Wells Fargo, as a purchaser and investor in mortgages, promulgated guidelines for its secondary-market mortgage purchases, stating that it would only buy mortgages that are not based on Section 8 income.

Those plaintiffs who applied for mortgages with AmeriPro allege that, with the Wells Fargo guidelines in mind, AmeriPro refused to consider their Section 8 income in assessing their creditworthiness in its evaluation of their mortgage applications so that it could sell the mortgages to Wells Fargo on the secondary market.

Other plaintiffs applied directly to Wells Fargo in its capacity as a mortgage originator, and they allege that it similarly refused to consider their Section 8 income.

---

[1] *See* 42 U.S.C. § 1437f(a) ("For the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section.").

No. 15-20710

The plaintiffs filed suit against both AmeriPro and Wells Fargo, claiming that they discriminated against them in violation of the ECOA on the basis of their receipt of public assistance income. The district judge granted defendants' Rule 12(b)(6) motion and dismissed all of plaintiffs' claims. Plaintiffs have timely appealed.

We affirm the dismissal of several, but not all, of plaintiffs' claims: some plaintiffs failed plausibly to allege that they were "applicants" under the ECOA; some plaintiffs failed plausibly to allege that Wells Fargo was a "creditor" under the ECOA; and some plaintiffs failed plausibly to allege that Wells Fargo engaged in any discriminatory conduct against them. We hold, however, that some plaintiffs did plausibly allege ECOA violations by AmeriPro, and reverse the district court's dismissal of those claims. In short, we affirm in part and reverse and remand in part.

I.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citations and quotations omitted). Keeping in mind that the ECOA prohibits "discriminat[ion] against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program," 15 U.S.C. § 1691(a)(2), we set forth the allegations in the plaintiffs' Complaint.[2]

As we have noted, plaintiffs are twelve individuals in the Houston, Texas area. All sought to qualify for a loan to purchase a home. All received public assistance income in the form of Section 8 housing vouchers, and all sought to use that income to make payments towards their desired new home mortgages.

---

[2] References to the Complaint refer to plaintiffs' Third Amended Complaint.

3

No. 15-20710

The essence of the plaintiffs' claim is that the lenders to whom they applied—defendants AmeriPro Funding, Inc. and Wells Fargo Bank, N.A.—refused, in violation of the ECOA, to consider their Section 8 voucher income in determining whether they were financially qualified for a loan.[3]  Plaintiffs claim that Wells Fargo had an explicit, publicly-available policy stating that in its secondary mortgage purchasing division—which would invest in or purchase mortgages originated by another financial institution—it would not purchase mortgages based on Section 8 income.  As the Complaint alleges:

> 76.  During all relevant periods of time, Defendant Wells Fargo Bank was a correspondent lender, who set up guidelines to purchase certain closed loans from creditors such as Defendant AmeriPro Funding.
>
> 77.  In its capacity as a correspondent lender, Defendant Wells Fargo Bank provided lending guides required to be utilized by creditors, such as Defendant AmeriPro Funding, seeking to sell its loans and in extending credit to applicants, such as Plaintiffs. . . .
>
> 79.  Wells Fargo Bank's own publically available policy states:
>
> Wells Fargo will not accept transactions including, but not limited to, the following:
>
> . . .
>
> FHA Section 8 loans
>
> Wells Fargo Funding Seller Guide 600.02(b).

It further alleges that AmeriPro, a mortgage originator, unlawfully refused to consider Section 8 income so that it could sell its newly-originated mortgages to Wells Fargo:

> 69.  Additionally, Defendant AmeriPro Funding denied credit and financing to Plaintiffs . . . because it claims it did not have an investor that would purchase a loan that allowed for

---

[3] One plaintiff also brought similar claims against another financial entity, Amegy Bank, N.A.  Those claims settled.

their Section 8 income to be utilized in calculating the debt to income ratio and for qualifying purposes.

70. Because Defendant AmeriPro Funding would not use the Section 8 voucher in its loan decision, Plaintiffs . . . could not secure a certain size mortgage. . . .

72. Defendant AmeriPro Funding sold their mortgage loans to other financial institutions, including Defendant Wells Fargo Bank.

73. As part of the correspondent lending practices of Wells Fargo Bank, any loans that Defendant AmeriPro Funding sold to Defendant Wells Fargo Bank had to meet the lending guidelines for Wells Fargo Bank.

74. During the time of Plaintiffs' loans and loan inquires made the basis of this lawsuit, Defendant AmeriPro Funding was informed by Defendant Wells Fargo Bank that the bank's lending guidelines did not allow the receipt of Section 8 income to be considered as qualifying income for determining whether an applicant qualifies for a loan and the calculation of the amount the applicant would be able to borrow.

Under these broad allegations, the plaintiffs appear to fall into three distinct groups.

## A.

The first group includes four plaintiffs—Alexander, C. Jones, Williams, and Woods—the "AmeriPro Applicants." The AmeriPro Applicants allege that they actually applied for loans with AmeriPro:

75. At least four Plaintiffs (Tina Alexander, Cheyanne Jones, Kendra Williams and Kyshia Woods), applied for loans with Defendant AmeriPro Funding which Defendant AmeriPro Funding processed with the intention of selling the loan to Defendant Wells Fargo Bank.

Each of the AmeriPro Applicants specifically alleges that she applied for a mortgage through AmeriPro, that the mortgage was processed with respect to Wells Fargo's lending guidelines, that her Section 8 income was not included

No. 15-20710

for consideration as part of the application, and that she obtained a mortgage on less favorable terms than if that income had been considered. For example:

85. Plaintiff Cheyanne Jones applied for a mortgage loan in approximately the summer of April 2012 with Defendant AmeriPro Funding which was processed using Defendant Wells Fargo Bank's lending guidelines since Defendant AmeriPro Funding intended to sell this loan to Defendant Wells Fargo Bank.

86. Plaintiff Cheyanne Jones' Section 8 income was not included for consideration as part of her mortgage application.

87. As a result of her Section 8 income not being considered as income on her mortgage application, Cheyanne Jones obtained less favorable mortgage terms and qualified for a mortgage at a lesser amount than if her Section 8 income had been considered.[4]

Plaintiff Tina Alexander made similar allegations, but was even more specific:

84. . . .

    c. When Alexander was told that her Section 8 income would not qualify as income on her mortgage application, she was told she would not qualify for a thirty year mortgage with the payments she wanted, and a house at a certain price level; and after being told that Alexander applied for a mortgage in accordance with the terms she was told she would qualify for without her section 8 income being considered as income on her mortgage application.

In sum, the AmeriPro Applicants allege that they applied for mortgages through AmeriPro and that AmeriPro did not consider their Section 8 income in processing the application because it intended to sell the mortgages to Wells Fargo.

---

[4] Plaintiffs Williams and Wood made substantively identical allegations in ¶¶ 88–93.

No. 15-20710

B.

The second group includes six plaintiffs—Alexis, Baines, Bennings, Haygood, Henry, and R. Jones—the "AmeriPro Inquirers."[5]

The difference between the AmeriPro Inquirers and the AmeriPro Applicants is that the Inquirers never allege that they applied for mortgages with AmeriPro.[6]  These plaintiffs allege only that:

61.  In addition to the foregoing allegations, [the AmeriPro Inquirers] also specifically requested financing and/or credit from Defendant AmeriPro Funding through various employees, agents and servants.

62.  [The AmeriPro Inquirers] contacted and made inquiry to Defendant AmeriPro Funding as to financing a home that each of them desired.

63.  Based on information and belief to date, [the AmeriPro Inquirers] contacted Defendant AmeriPro Funding during various months of the calendar years 2011 to and including 2014. . . .

69.  Additionally, Defendant AmeriPro Funding denied credit and financing to [the AmeriPro Inquirers] . . . because it claims it did not have an investor that would purchase a loan that allowed for their Section 8 income to be utilized in calculating the debt to income ratio and for qualifying purposes.

---

[5] Wells Fargo points out that four of these plaintiffs—Alexis, Baines, Henry, and R. Jones—voluntarily dismissed their claims against it without prejudice.  The remaining two—Bennings and Haygood—are still pursuing claims against Wells Fargo, and all six are pursuing claims against AmeriPro.

[6] At oral argument, plaintiffs' counsel insisted that all plaintiffs, including the six plaintiffs we call the AmeriPro Inquirers, did, in fact, complete an application to apply for a loan.  However, this appeal comes from a 12(b)(6) motion to dismiss; the relevant pleading now before us is the Third Amended Complaint.  But the Third Amended Complaint has no allegations suggesting that they did, in fact, apply.  Paragraph 40 of the Complaint, which plaintiffs' counsel cited at oral argument, provides no support.  Its claim that "Defendants discriminated against Plaintiffs in their capacity as applicants seeking credit to purchase a home" is a conclusory allegation; it contains no factual content.

70. Because Defendant AmeriPro Funding would not use the Section 8 voucher in its loan decision, [the AmeriPro Inquirers] . . . could not secure a certain size mortgage. . . .

In sum, the AmeriPro Inquirers allege that they requested information regarding mortgages from AmeriPro. The implication is that they did not apply for loans because they were discouraged from applying because their Section 8 income would not be considered.

C.

The third group consists of two plaintiffs—Baylor and Kennerly—the "Wells Fargo Applicants."

The Wells Fargo Applicants did not approach AmeriPro at all. Indeed, they are not bringing any claims against AmeriPro. Instead, they applied directly to Wells Fargo in its capacity as a mortgage originator:

81. In addition Zachary Baylor and Tracey Kennerly, who applied for mortgage loans with Wells Fargo, were discriminated against by Wells Fargo's refusal to consider Section 8 income or other public assistance for consideration in its mortgage loan decisions on the same basis as non-public assistance income. . . .

94. Plaintiff Zachary Baylor applied for a mortgage loan in approximately 2011 with Defendant Wells Fargo Bank. . . .

96. Plaintiff Zachary Baylor's Section 8 and other public assistance income was not considered by Wells Fargo on the same basis as non-public assistance income for his mortgage application. . . .

102. Plaintiff Tracey Kennerly applied for a mortgage loan in approximately early 2012 with Defendant Wells Fargo Bank. . . .

104. Plaintiff Tracey Kennerly's Section 8 income was not considered on the same basis by Wells Fargo as non-public assistance income for consider[ation] of her mortgage application.

105. Plaintiff Tracey Kennerly's down payment housing voucher was not included for consideration by Wells Fargo as part of her mortgage application. . . .

109. As a result of her Section 8 income not being considered on the same basis as non-public assistance income for the purpose of her mortgage application, Tracey Kennerly obtained less favorable mortgage terms and qualified for a mortgage at a lesser amount than if her Section 8 income had been considered equally as non-public assistance income. . . .

In sum, the Wells Fargo Applicants allege that they applied directly for loans with Wells Fargo and—presumably based on the language in Wells Fargo's guidelines for *secondary* mortgage purchases—claim that their Section 8 income was not considered.

We now turn to the proceedings before the district court.

## II.

Plaintiffs filed suit in state court, alleging violations of the ECOA. Defendants removed to federal court on the basis of federal question jurisdiction. After plaintiffs amended their complaint three times, defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion and dismissed all claims with prejudice.

First, the district court considered whether the plaintiffs' claims plausibly satisfied the elements of the *McDonnell Douglas* "prima facie case" for circumstantial evidence in proving a discrimination claim. *See Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) ("If the plaintiff seeks to establish causation by circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas* applies."). The court found that they did not because plaintiffs failed to allege that they were treated differently from any similarly situated applicant. Second, the district court considered

whether plaintiffs plausibly alleged enough direct evidence of discrimination to bypass the *McDonnell Douglas* framework. *See Fierros*, 274 F.3d at 192 ("If, on the other hand, the plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the *McDonnell Douglas* framework does not apply."). The district court again found that they did not. Satisfied that the plaintiffs had not sufficiently pled either circumstantial or direct evidence of discrimination under the ECOA, the district court dismissed the complaint for failure to state a claim.

## III.

This court reviews the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994).

In order to state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To state a claim for relief under the ECOA, the plaintiffs must plausibly show that they were discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class. *See* 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a).[7]

The Supreme Court has clearly explained the standard for evaluating whether a complaint states a valid claim for relief:

---

[7] *Accord Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011) ("To state a claim under the ECOA, Mrs. Davis had to allege that she was an 'applicant' and that the defendants treated her less favorably because of her race.").

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citations, quotations, and alterations omitted).

### IV.

Thus, the question that we are called upon to address is whether the district court erred in holding that none of the plaintiffs stated a plausible claim for relief. This consideration requires that we address the question as to each group of plaintiffs in turn.

### A.

First, we turn to the Wells Fargo Applicants. This "group" includes the two plaintiffs who applied directly for a loan with Wells Fargo.

There is no dispute that they are "applicants," nor that Wells Fargo was a "creditor" with respect to them. Nevertheless, we find that they did not plausibly state a claim against Wells Fargo.

No. 15-20710

The *only* fact that these applicants allege to establish that Wells Fargo illegally refused to consider their Section 8 income is that its guide stated that it would not purchase mortgages originated by other lenders when based on Section 8 income.   But the question of Wells Fargo's purchasing on the secondary mortgage market is distinct from its practices as an originating lender.   Indeed, the ECOA does not prohibit discrimination with respect to mortgages purchased on the secondary market; the Act only applies to originating lenders in the primary market.   Thus the facts alleged by the Wells Fargo applicants have no plausible relation to the statutory injury they assert.

All of the other allegations that the Wells Fargo Applicants make, *see, e.g.,* Complaint at ¶¶ 81, 96, 104, 105, 109, above, are not facts and are no more than "formulaic recitation[s] of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678–79.   In short, such recitations are only hollow support to a plausible claim that Wells Fargo discriminated against them in their loan applications on the basis of their Section 8 income.   Accordingly, the district court's judgment as to the Wells Fargo Applicants is affirmed.

B.

Next, we address the claims of the six AmeriPro Inquirers, who sought information from AmeriPro but did not apply for a loan.

As we have earlier noted, the ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program."  15 U.S.C. § 1691(a)(2).   One remedy for such discrimination is a civil cause of action, providing that "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the *aggrieved applicant*."  15 U.S.C. § 1691e(a) (emphasis added).   "Applicant" is defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies

No. 15-20710

to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).[8]

"There is nothing ambiguous about 'applicant.'" *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007). "To 'apply' means 'to make an appeal or request especially formally and often in writing and usually for something of benefit to oneself.' Thus, the plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit." *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) (citing Webster's Third New International Dictionary 105 (2002)) (alterations omitted), *aff'd by an equally divided Court*, 136 S. Ct. 1072 (2016).[9]

The AmeriPro Inquirers' claims fail because, after filing a Third Amended Complaint, they do not plausibly allege that they "applie[d]" for a loan or otherwise requested credit. Nor do they identify any AmeriPro personnel with whom they may have had any conversation. They allege only that they "contacted and made inquiry . . . as to financing a home," and that they "contacted Defendant AmeriPro Funding during various months of the calendar years 2011 to and including 2014." Complaint ¶¶ 62–63. These are the only allegations, broad and unspecific as they are, that the AmeriPro Inquirers make that are not conclusions and formulaic recitations of the

---

[8] Further, "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

[9] Some courts have found that "applicant" is ambiguous with respect to whether the term covers a guarantor. *See, e.g., RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 384–85 (6th Cir. 2014). We need not decide whether the term includes a guarantor, or whether we ought to defer to Regulation B's definition of the term, which, unlike the statute, explicitly includes guarantors, and which, unlike the statute, includes those who "request[ ]" credit. *See* 12 C.F.R. § 202.2(e). We are satisfied that the term "applicant" does not include individuals who are not guarantors and who never request credit at all.

elements of the claim.[10]  Such allegations are insufficient plausibly to show that they "applied" for credit.  Not only do the allegations fail to show that the AmeriPro Inquirers made an application for a loan, they fail to show that the AmeriPro Inquirers "request[ed] credit" at all.  *Hawkins*, 761 F.3d at 941; *cf.* The American Heritage Dictionary of the English Language 678 (1981) (defining "inquire" as "To put a question," "To request information," "To make an inquiry; look into; investigate," "To ask about," or "To ask"); *see also* 76 Fed. Reg. 79,442, 79,472 (2011) (listing "[e]xamples of inquiries that are not applications").

Plaintiffs cite *Moore v. United States Department of Agriculture on Behalf of Farmers Home Administration*, 993 F.2d 1222 (5th Cir. 1993), for the proposition that plaintiffs need not complete an application in order to be considered "applicants."  There, the court reversed a district court's holding that a white applicant—who was denied credit on the basis that a program categorically excluded whites—did not have standing because he failed to complete his application. *Id.* at 1222–24.  Moore's submitted application was incomplete because he failed to fill in the application's form indicating "the minority you represent." *Id.* at 1223 n. 2.  Thus, unlike here, Moore actually submitted an application, and he actually requested credit.  The AmeriPro Inquirers, by contrast, have only alleged that they sought information about credit.

---

[10] For example, the AmeriPro Inquirers allege that "[i]n addition to the foregoing allegations, Plaintiffs . . . also specifically requested financing and/or credit from Defendant AmeriPro Funding through various employees, agents and servants."  Complaint ¶ 61.  This non-specific, conclusory allegation, standing alone and unsupported by any other factual content, tells us nothing and is insufficient to survive a motion to dismiss.  Although plaintiffs claim that they "specifically requested financing and/or credit," they (unlike the AmeriPro Applicants) offer nothing to support this bald assertion, and instead go on to state only that they "inquired" about loans.  Additionally, they later allege that they were "denied credit and financing," Complaint ¶ 69, but this allegation is unsupported and implausible in the light of their failure to allege that they ever applied for, or otherwise requested, credit.

No. 15-20710

Plaintiffs also counter that even if they did not actually apply, they failed to apply only because they were "discouraged" from applying.  It is true that a regulation pertinent to the ECOA, known as "Regulation B," provides that "[a] creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application." 12 C.F.R. § 202.4(b).  But § 202.4(b) does not alter the definition of "applicant," and only an "aggrieved applicant" has standing under the ECOA to bring a private cause of action.  15 U.S.C. § 1691e.  The statute provides no cause of action for an "aggrieved prospective applicant."   Discouragement of a "prospective applicant" may be regulatorily prohibited, but it cannot form the basis of a private claim or cause of action under the ECOA.[11]

Because the AmeriPro Inquirers have not alleged a plausible factual basis to show that they were "applicants" under the ECOA, they fail to state a claim.  We thus affirm the district court's judgment as to the AmeriPro Inquirers.

C.

Third, we consider the claims of the four AmeriPro Applicants, who applied for loans with AmeriPro.  We first address their claims against AmeriPro, and then address their claims against Wells Fargo.

1.

The AmeriPro Applicants each specifically allege that they filled out a loan application with AmeriPro.  Thus, under the ECOA, they are "applicants" to AmeriPro.   The only disputed issue concerning their claims against

---

[11] Administrative agencies have broader enforcement powers under the ECOA than individuals attempting to bring a private cause of action.  *See* 15 U.S.C. §§ 1691c, 1691e.

No. 15-20710

AmeriPro is whether they sufficiently alleged that AmeriPro violated the ECOA by discriminating against them based on their Section 8 income.

The AmeriPro Applicants each allege that they were "denied credit and financing" because AmeriPro "claims it did not have an investor that would purchase a loan that allowed for their Section 8 income to be utilized in calculating the debt to income ratio and for qualifying purposes." Complaint ¶ 69. Thus they allege that an unidentified AmeriPro agent or employee told them that something was unacceptable about their Section 8 income because AmeriPro could not sell mortgages based on such income. Further, Tina Alexander alleges specifically that she was "told that her Section 8 income would not qualify as income on her mortgage application." Complaint ¶ 84.

These allegations, taken together, are sufficient plausibly to show that the Applicants applied for a mortgage with AmeriPro, that AmeriPro refused to consider their Section 8 income in assessing their creditworthiness, and that, as a result, they received mortgage loans on less favorable terms and in lesser amounts than they would have received had their Section 8 income been considered.[12] The alleged conduct is "discriminat[ion] . . . with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program," 15 U.S.C. § 1691(a)(2), and that is all that is required to state a claim for relief.

We therefore hold that the AmeriPro Applicants have stated a claim against AmeriPro. We reverse the district court's judgment as to these claims and remand for further proceedings.

---

[12] The Applicants' allegations "allow[ ] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678–79, that they received mortgages on less favorable terms than if their Section 8 income had been considered. Based on common sense alone, it is plausible, if not likely or even certain, that an applicant able to list Section 8 income would receive more favorable terms—better rates, higher lending limits, etc.—than the same applicant would without listing the income.

16

2.

The AmeriPro Applicants also assert claims against Wells Fargo. They argue that since Wells Fargo's *secondary-market* policy of refusing to purchase mortgages that rely on Section 8 income determined AmeriPro's *primary-market* policy of discriminating against applicants with Section 8 income, Wells Fargo should also be liable for violating the ECOA. We cannot agree, however, that these allegations state a cognizable cause of action under the statute against Wells Fargo as a player in the secondary market.

The primary issue is whether Wells Fargo is a "creditor" as to the AmeriPro Applicants. The ECOA defines "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Relevant too is the definition of "applicant": "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). The AmeriPro Applicants do not allege that they applied either "directly" or "indirectly" to Wells Fargo; they applied to AmeriPro. Wells Fargo, then, can only be held liable as a creditor as to the AmeriPro Applicants if it was an "assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

The AmeriPro Applicants fail to state a claim against Wells Fargo because they fail plausibly to allege that Wells Fargo "participate[d]" in the decision to extend credit. They make no allegations whatsoever concerning Wells Fargo's alleged "participation" other than pointing out that Wells Fargo had a policy *in the secondary market* of not purchasing mortgages that were

17

originated *by someone else in the primary market* based on Section 8 income. Again, this policy does not violate any prohibition under the ECOA. The ECOA does not apply, and does not purport to apply, to arms-length transactions in the secondary mortgage market. But the AmeriPro Applicants allege only that AmeriPro was a seller in the secondary market, that Wells Fargo was a purchaser of AmeriPro's mortgages, and that Wells Fargo's publicly-available purchasing guidelines excluded mortgages that implicate Section 8 housing vouchers. There is no allegation that Wells Fargo had any "participation" whatsoever in AmeriPro's decision to extend credit to any of its applicants.[13] *Cf.* The American Heritage Dictionary of the English Language 955 (1981) (defining "participate" as "To take part; join or share with others"); Webster's Third New International Dictionary of the English Language Unabridged 1646 (1993) (defining "participate," in relevant part, as "to take part in something (as an enterprise or activity) usu[ally] in common with others").

The Consumer Financial Protection Bureau ("CFPB"), as amicus, argues that the ECOA's and Regulation B's definitions of "creditor" are broad enough to encompass Wells Fargo's conduct. *See* 12 C.F.R. § 202.2(l) ("Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates."); 12 C.F.R. Pt. 1002, Supp. I ¶ 1002.2(l)(1), 76 Fed. Reg. 79,442, 79,473 (2011) ("The term creditor includes all persons participating in the credit decision. This may include an assignee or a potential purchaser of the obligation who influences the credit decision by indicating whether or not it will purchase the obligation if the transaction is consummated."). But even Regulation B's

---

[13] To the extent the Complaint attempts to insinuate as much, it does so through conclusory allegations that are not entitled to any presumption of truth.

definition of "creditor" does not purport to extend to those who have no direct involvement whatsoever in an individual credit decision. *See* 68 Fed. Reg. 13,144, 13,145 (2003) ("The final rule clarifies that the definition of creditor includes those who make the decision to deny or extend credit, as well as those who negotiate and set the terms of the credit with the consumer. But a potential assignee who establishes underwriting guidelines for its purchases but does not influence individual credit decisions is *not* a creditor.") (emphasis added);[14] *accord In re Simmerman*, 463 B.R. 47, 63 (Bankr. S.D. Ohio 2011) ("[A]n assignee may only be held liable as a 'creditor' when the assignee influences the credit decision by, for example, participating in the decision to extend credit or by negotiating the terms of the credit. Without being involved in or influencing the credit decision, the assignee will not be held liable as a creditor under the ECOA.").

In sum, we reject the broad expansion of ECOA liability urged by the AmeriPro Applicants and the amicus CFPB to include the conduct of Wells Fargo in the secondary market.

V.

We sum up: the "Wells Fargo Applicants"—plaintiffs Baylor and Kennerly—do not plausibly allege that Wells Fargo discriminated against them on the basis of their Section 8 income or failed to consider their Section 8 income in assessing their creditworthiness. The "AmeriPro Inquirers"— plaintiffs Alexis, Baines, Bennings, Haygood, Henry, and R. Jones—do not plausibly allege that they are "applicants" under the ECOA because they did not actually apply for credit with AmeriPro. The claims of the "AmeriPro

---

[14] The 2011 guidelines, though arguably broader than the 2003 guidelines, were careful to note that "this interim final rule does not impose any new substantive obligations on regulated entities." 76 Fed. Reg. at 79,442.

No. 15-20710

Applicants"—plaintiffs Alexander, C. Jones, Williams, and Woods—as against Wells Fargo do not plausibly allege that Wells Fargo was a "creditor" with respect to them.  The district court's dismissal is affirmed as to these claims.

The claims of the "AmeriPro Applicants" as against AmeriPro, however, do plausibly allege violations of the ECOA.  These plaintiffs have plausibly alleged that AmeriPro refused to consider their Section 8 income in assessing their creditworthiness as mortgage applicants, and that they received mortgages on less favorable terms and in lesser amounts than they would have had their Section 8 income been considered.  We reverse the district court's judgment as to these claims, and remand for further proceedings not inconsistent with this opinion.

The district court's judgment is therefore AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED for further proceedings in accordance with this opinion.